BANK OF WILLMAR v. JERRY LAWLER.

November 22, 1899.

Nos. 11,802—(94).

## New Trial Granted without Motion—Misconduct of Jury—Action in Claim and Delivery.

*Held*, the trial court may, under proper circumstances, grant a new trial on its own motion, at least in an aggravated case of misconduct by the jury. *Held*, further, this is such a case, as the jury wholly failed to find on the issues between the plaintiff and the defendant, and the verdict in favor of the intervenor is so manifestly and palpably against the great weight of the evidence that it would be an abuse of discretion to refuse to grant a new trial on motion made on the proper ground.

Action in the district court for Kandiyohi county to recover possession of personal property or the sum of $2,000, the value thereof, and $200 damages for its detention. Thomas Lawler intervened, and in his complaint alleged ownership of an undivided one-half of the property. The case was tried before Qvale, J., and a jury, which rendered a verdict in favor of the intervenor; and from an order whereby the court of its own motion granted a new trial, the intervenor appealed. Affirmed.

*John T. Byrnes*, for appellant.

*Samuel Porter*, for respondent.

CANTY, J.[1]

The defendant executed a chattel mortgage to plaintiff. There being a default in the conditions of the mortgage, plaintiff brought an action of replevin to recover possession of the mortgaged property, consisting of horses, cattle, sheep, wagons, and farm machinery. The answer of defendant is a general denial. At the commencement of the term of court at which the case was set for trial, Thomas Lawler, the son of defendant, intervened in the action, and in his complaint in intervention alleges that he is, and at the commencement of the action was, the owner of an undivided one-half interest in the property described in plaintiff's complaint, and de-

[1] BUCK, J., absent.

nies that plaintiff is the owner or entitled to the possession of any part of such property. On the trial the jury found for the intervenor, "that he is the owner of one-half of the property described in the sheriff's return, and entitled to the possession thereof," but did not find on the issues between the plaintiff and the defendant at all. After setting out this verdict, the settled case proceeds as follows:

"Verdict of said jury received, recorded, read, and filed. The court then, upon its own motion, and during the absence of counsel for the defendant and intervenor, made the following order: 'Ordered, that the verdict of the jury be set aside and a new trial granted in said action, for the reason that no such verdict could be found or submitted under the instructions given to the jury. The instructions of the court, which is the law of the case, have been entirely disregarded. The verdict is contrary to law as well as contrary to the weight of evidence.' And the clerk was directed to enter the order on the minutes."

From this order of the court granting a new trial, the intervenor appeals.

Appellant contends that as our statute provides that the notice of motion for a new trial shall be in writing, and shall state the grounds of the motion, the court below had no authority to grant a new trial on its own motion. Under the common-law practice, it was well settled that the trial court could grant a new trial on its own motion. 2 Thompson, Trials, § 2711. Our code of civil procedure does not expressly cut off this power of the court, and, in our opinion, does not do so by implication, although the code may to some extent limit or modify that power. The power to grant a new trial is not given to the district court by statute. "The power of such court to grant a new trial is not, like the right to appeal under our law, conferred by statute; it is inherent in courts of general jurisdiction, not given, but regulated by statute." McNamara v. Minn. Central Ry. Co., 12 Minn. 269 (388). The provisions of such a statute regulating motions for a new trial do not prevent the court, in a proper case, from granting a new trial on its own motion. Allen v. Wheeler, 54 Iowa, 628, 7 N. W. 111; 2 Thompson, Trials, § 2711.

As a general rule, the trial court should not exercise this power except in aggravated cases. We are of the opinion that this is such

a case. Not only did the jury fail to find on the issues between the plaintiff and defendant, as the court instructed them to do, but the verdict in favor of the intervenor is, to say the least, so manifestly and palpably against the great weight of the evidence that it would have been an abuse of discretion to deny a new trial if plaintiff had moved for one on the proper ground. The intervenor took the witness stand in his own behalf, and testified that he has had a half interest in the property since 188    He further testified:

"Q. What time was it mortgaged?    A. In 1890; December 23, or about that time. It has been mortgaged substantially ever since about, nearly— I have had a half interest in all of the property. * * * Q. What consideration did you pay your father in 1889, when you bought a half interest in this property? A. Do you want me to go into details? Q. I want to know what you paid him. A. I had been staying at home all of my life. Q. You were not of age then? A. No; I was about to go away—my brother and I—both of us. He is now in Montana. He said if I would stay and help him on, as he had a good deal of work to do, and no one to help him, if I would stay he would give me possession of half,—a half interest in the stock that was there at the time. Q. That is the only consideration you paid for it? A. That is all. Q. You were then about 18 years of age. A. Yes, sir. Q. What time of the year was this? A. In the early part of January. Q. About 1889? A. Yes, sir. * * * Q. Did you keep any account between you and your father in regard to the expenses of caring for this stock? A. No, sir. Q. Who sold the stock, when any of it was sold? A. Either of us. Q. Who got the money for it? A. He got the money sometimes, and sometimes I did. Q. Did you ever get any money for it? A. Yes, sir. Q. When? A. I sold a cow to Frank Halberg, of this town, in, I think, 1892. Q. What if you did? A. I got the money for it. Q. What did you do with the money? A. I used it. Q. Used it yourself? A. Yes, sir. Q. That is all you ever got in money for any stock you sold? A. Yes; that is all I ever bought. When I sold any stock I always turned the money over to him. Q. There has been a considerable of this stock and the increase sold since that time? A. Yes, sir. Q. That is all you got in money for the sale of any of it? A. That is all. Q. That one cow? A. Yes, sir. Q. You think it was about 1891 or 1890 when you first learned that your father had mortgaged this property to the Bank of Willmar? A. Later than that. Q. How much later? A. I think the first time I learned it was this time this wheat was in question, in 1893. Q. In 1893? A. Yes, sir. Q. That is the first you knew anything about it? A. Yes, sir. Q. You had an interest in that wheat, too? A. I did. Q. A half interest? A. Yes, sir. Q. You didn't inform the bank then that you had a half interest in it? A. No. * * *

Q. How long were you to work for your father for a half interest in this property? A. Until I got ready to get married; until I got married and settled on my own farm, or any time I might want to dissolve. Q. In whose name had this property been assessed since that time? A. It had been assessed in my father's name."

It appears by the evidence that the present mortgage is a renewal of several successive prior ones given by defendant to plaintiff,— the first mortgage being so given in 1890,—and there is evidence tending to prove that the intervenor knew during all of this time of the giving of these successive mortgages He admits that he knew all about it in 1893.

Order affirmed.