ELIZABETH B. STEBBINS v. J. E. MARTIN and Another.[1]

April 11, 1913.

Nos. 18,072—(194, 195).

**Proof of conversion.**

1. Conversion may be established by proof of actual misappropriation, or, where plaintiff is entitled to possession, by demand and refusal. A showing that a pledgee of stock "turned it over" to a third party is not proof of misappropriation, without further proof as to the manner of its turning over. The proof must show that there was a repudiation of the pledgeor's rights.

**Conversion — demand and refusal.**

2. A demand and refusal is evidence of conversion only when the person making the demand is entitled to possession. One to whom stock is pledged as collateral security for money advanced, to be repaid in breaking, is entitled to hold the stock until the breaking is done or the money repaid, and refusal of a demand prior thereto does not constitute conversion.

**Settlement of action for breach of contract not a discharge of claim for advances.**

3. Stebbins agreed to plow 3,000 acres of land for Martin at a stipulated price per acre. Martin advanced $525, to be used in buying an outfit, the amount to be paid in breaking. Stebbins did no breaking. Martin's assignee sued him for damages for breach of contract, alleging increased cost of breaking and lost profits. The suit was settled and dismissed on the

[1] Reported in 140 N. W. 1029.

merits. *Held* not a discharge of the claim for money advanced. Such a claim was no part of the damages sued for in that action.

**Judgment notwithstanding verdict.**

4. Judgment notwithstanding the verdict should not be granted, where from the record it appears probable that the plaintiff has a good cause of action, and that the defects in the evidence could be supplied on another trial.

**Grant of new trial upon court's motion.**

5. The trial court may, on its own motion, grant a new trial for insufficiency of evidence in aggravated cases, as where the verdict is so manifestly and palpably against the evidence that it would have been an abuse of discretion to deny a new trial, had the party aggrieved made a motion therefor. This rule applies, even though the verdict was directed by the court.

Action in the district court for Hennepin county to recover $2,300, and interest, for conversion of a certain certificate of stock for 230 shares. The separate answers of defendants were general denials. The case was tried before Jelley, J., who directed a verdict in favor of plaintiff for the amount demanded. Defendants' joint motion for a judgment in favor of defendants, notwithstanding the verdict, or for a judgment in favor of plaintiff and against defendants for the sum of one dollar and costs was denied, and of its own motion the court vacated the verdict and ordered a new trial. From the order setting aside the verdict and ordering a new trial, plaintiff appealed. From the order denying defendants' alternative motion and granting a new trial, defendants appealed. From the order granting a new trial, plaintiff appealed. Affirmed.

*Jay W. Crane,* for plaintiff.

*Jesse Van Valkenburg* and *George S. Grimes,* for defendants.

HALLAM, J.

On March 30, 1910, A. T. Stebbins and defendant Martin entered into a contract whereby Stebbins agreed to break 3,000 acres of land in the province of Saskatchewan during the season of 1910, at least 1,000 acres to be broken before June 1. Martin agreed to pay $3.50 an acre for all breaking done before June 1, and $3 an acre for all breaking done thereafter. On April 15 Martin advanced to Stebbins $525 to pay the expenses of outfitting. To secure the same Stebbins

hypothecated the stock which is the subject of this action, and which belonged to his mother, the plaintiff. Martin gave a receipt for the stock in language as follows:

"Received from A. T. Stebbins 230 shares of Wauwatosa Real Estate Company, No. 88, to be held as collateral security for five hundred and twenty-five dollars, advanced to said Stebbins for breaking to be done as per contract dated March 30th, 1910. The said stock to be returned as soon as sufficient breaking is done to amount to the sum advanced.

[Signed]                                              "J. E. Martin.
                                                      "Keogh."

Stebbins broke only 10 acres of land. On February 4, 1911, Martin assigned his interest in said contract, together with all damages accruing on account of the breach thereof, to the defendant McDonald.

McDonald thereupon brought an action against A. T. Stebbins for damages for the breach of said contract. The complaint alleged two elements of damage: First, that the cost and reasonable value of breaking said 3,000 acres during the season of 1910 was $4.50 an acre, and that said Martin was damaged to the extent of the difference between this amount and the contract price; second, that if Stebbins had performed his contract, Martin could have raised a crop of the value of $4,000 over and above all expenses of raising and marketing the same; that the rental value of said 1,000 acres, broken before June 1, was the sum of $4,000; that unbroken it had no rental value. Stebbins in answer to said complaint admitted the contract, alleged a release thereof, and denied that Martin had suffered any damage. This action was tried, and the jury disagreed. In January, 1912, the parties settled the action in consideration of Stebbins paying the sum of one dollar and other valuable considerations, which aggregated in the neighborhood of $100. On said stipulation, judgment was entered January 5, 1912, dismissing said action on the merits.

It appears that on the trial of that action the defendant Martin had, in speaking of the stock, stated that he had "turned it over to McDonald." On January 8, 1912, the plaintiff in this action,

through her attorney, demanded a return of this certificate of stock. The demand was refused, and plaintiff brought this action for conversion of the stock. On the trial of this action neither defendant appeared. Plaintiff procured a subpœna requiring their attendance, but neither of them could be found, although the defendant McDonald had been in the city of Minneapolis, where the case was tried, the evening before. Prior to the trial, plaintiff served on defendants' attorneys notice to produce said certificate of stock. The certificate was not produced, although it was admitted that defendant McDonald had turned over either the original certificate or a substituted certificate to one of his attorneys.

At the conclusion of plaintiff's testimony both parties rested. Both parties moved for a directed verdict. The court granted plaintiff's motion, and directed a verdict in her favor for the par value of the stock. Thereafter defendants moved for judgment notwithstanding the verdict. The court denied this motion, but on its own motion granted a new trial on the following grounds: First, that said verdict is not justified by the evidence; and, second, that said verdict is contrary to law. Both parties appeal.

1. The order granting a new trial should be affirmed. The order for a directed verdict in favor of plaintiff was wrong. The evidence does not sustain such a verdict. This is an action for conversion of this stock. Conversion may be established by proof of actual misappropriation, as by sale or consumption of the property, or, in a case where the plaintiff is entitled to the possession of the property, it may be established by mere proof of a demand of possession made by the plaintiff, and a refusal of defendant to deliver. There is no evidence of actual misappropriation of the stock. Misappropriation cannot be inferred from the mere fact that Martin "turned it over" to McDonald, without further proof of the manner of its turning over. The proof must show that there was a repudiation of plaintiff's rights as pledgeor. If Martin made an absolute sale of the stock to McDonald, both were liable in conversion (Jesurun v. Kent, 45 Minn. 222, 47 N. W. 784; Upham v. Barbour, 65 Minn. 364, 68 N. W. 42); but it does not appear that Martin did so. For aught that appears, he may have assigned the claim for $525 to McDonald, and

turned the stock over as the collateral security accompanying the debt. This would not constitute conversion of the stock.

2. The only evidence of conversion claimed is that of demand of possession made by plaintiff and refusal by defendants to deliver. Accordingly there was no conversion, if the refusal was justified; that is, if plaintiff was not entitled to possession. The evidence shows that the plaintiff was not entitled to possession of the stock at the time of such demand. The stock was pledged to Martin "as collateral security" for $525 advanced. This advance was to be repaid by breaking. The breaking never having been done, Martin was entitled to recover the money advanced. In other words, he had a claim against Stebbins for that amount, and held this stock as collateral security. As long as this relation of the parties continued, plaintiff was not entitled to demand her stock, and it was not a conversion on the part of defendants to refuse such a demand. In other words, plaintiff would not be entitled to a return of this stock until the debt was paid or tendered, or in some manner released. There is no claim of either payment or tender of the debt.

3. What plaintiff does claim is that the settlement of the suit for damages brought by McDonald against A. T. Stebbins was a settlement of this claim, and that the judgment dismissing that suit was an adjudication that this debt had been paid. We cannot concur in this contention. The debt arising from the advancement of this $525 was no part of the damages for breach of the plowing contract. An advance payment made under a contract is no part of the damages for breach of the contract. Martin would have been entitled to a return of this money, had he suffered no damages at all from the breach of contract; that is, if he could have hired some one else to do the breaking at the same price stipulated in Stebbins' contract, and without other loss. He could have recovered this money advanced, even had the plowing contract been rescinded, and thereby wiped out of existence. The claim for damages and the claim for return of this money were, accordingly, separate and distinct claims. They might have been joined in the same action, but they were not. The claim for the return of the $525 was not mentioned in the damage suit, and it was not affected by the settlement of the damage suit, nor by the

judgment dismissing the same. It follows that the defendants, or one of them, had, at the time of the commencement of this action, a subsisting claim against A. T. Stebbins for $525, and had a right to hold this stock as collateral security. The cause of action for conversion is accordingly not sustained by the proof.

4. The next question is: Should defendants have judgment notwithstanding the verdict? Such motions are only granted when the evidence is conclusive against the verdict. Fohl v. Chicago & N. W. Ry. Co. 84 Minn. 314, 87 N. W. 919; Marengo v. Great Northern Ry. Co. 84 Minn. 397, 87 N. W. 1117, 87 Am. St. 369; Fischer v. Sperl, 94 Minn. 421, 103 N. W. 502; Cruikshank v. St. Paul F. & M. Ins. Co. 75 Minn. 266, 77 N. W. 958. It should not be granted where from the record it appears probable that the plaintiff has a good cause of action, and that the defects in the evidence could be supplied on another trial. Cruikshank v. St. Paul F. & M. Ins. Co. supra. It was doubtless the view of the trial court that this was such a case.

The facts of this case were peculiarly within the knowledge of the defendants. The failure of either defendant to appear on the trial, the inability of the sheriff to find them on the day of the trial, although the defendant McDonald, who was apparently the real party in interest, was in the city the evening before, the failure of the defendants to produce the certificate of stock on the trial, although notified to do so, make it appear probable that on another trial plaintiff may prove further substantial rights than she was enabled to prove on the last trial. We accordingly hold that the defendants' motion for judgment notwithstanding the verdict was properly denied.

5. The remaining question is: Was the order granting a new trial proper? It is well settled that a trial court may exercise the power to grant a new trial upon its own motion in aggravated cases. Bank of Willmar v. Lawler, 78 Minn. 135, 80 N. W. 868; Farris v. Koplau, 113 Minn. 397, 129 N. W. 770. Such an order may be made for insufficiency of evidence, where the verdict is so manifestly and palpably against the weight of the evidence that it would have been an abuse of discretion to deny a new trial, if the party aggrieved had made a motion therefor. Farris v. Koplau, supra. This is such a

case. This rule applies, even though the verdict in question was directed by the court. Forbes v. New York, 178 Mass. 139, 59 N. E. 636. On the record before the court, this order for a directed verdict was palpably erroneous, and it cannot stand. Had defendants moved for a new trial, it would of necessity have been granted. Plaintiff is, accordingly, in no position to complain of the order granting a new trial. Defendants in their brief declare that they "do not complain particularly of the action of the court granting a new trial." They clearly do not so complain, if they themselves cannot have judgment notwithstanding the verdict.

The order is accordingly affirmed.