SIMON E. THOMAS, Administrator, Appellee, v. ILLINOIS CENTRAL RAILROAD COMPANY, Appellant.

**NEW TRIAL: Motion Assigning Several Grounds—Sustained Generally—Effect.** The granting of a new trial generally under a motion assigning several grounds therefor will not be disturbed if *any* of the grounds are tenable.

**NEW TRIAL: Granting by Trial Court—Reluctance to Overturn.** It must be a clear case, indeed, to warrant the appellate court in overturning the action of the trial court in granting a new trial, especially when the reason assigned is that the verdict is contrary to the evidence.

**NEW TRIAL: Instructions Not Submitted to Counsel—When Objection Timely.** An objection to an erroneous instruction, not submitted to counsel before being read, as required by Sec. 3705-a, Sup. Code, 1913, is timely if made for the first time in a motion for new trial.

**NEW TRIAL:** Inherent Power of Judge to Grant. A "new trial" may be ordered by a trial judge by virtue of his inherent power, even though our statute provides a procedure for the granting of new trial "on the application of the party aggrieved." (Sec. 3755, Code.)

**RAILROADS:** Negligence—Crossing Accident—Guest Relying on Driver—"Look and Listen" Rule. The standard of reasonable care required of a mere *guest,* in approaching a railroad crossing, and riding in a conveyance on the invitation of another, may be and ordinarily is markedly different than the standard required of the driver over whose actions the *guest* has no control. The *guest* may have the right to rely on the driver "to look and listen." Material considerations are (a) the position of the guest in the conveyance, (b) whether the guest participated in the negligence of the driver, and (c) whether the driver was known to be incompetent, etc.

*Appeal from Webster District Court.*—Hon. C. E. Albrook, Judge.

Thursday, March 11, 1915.

Action at law to recover damages for the death of Flossie Mericle, due to the collision of an automobile in which she was riding, with a passenger train on defendant's road. The case was tried to a jury, resulting in a verdict for defendant, which on plaintiff's motion was set aside, and a new trial granted, and defendant appeals.—*Affirmed.*

*M. J. Mitchell,* and *Helsell & Helsell* (*Blewett Lee* and *W. S. Horton,* of counsel), for appellant.

*Healy, Burnquist & Thomas,* for appellee.

Deemer, C. J.—The negligence charged was the dangerous and excessive rate of speed of the train; failure to maintain gates or to have a watchman at the crossing where plaintiff's intestate was killed; the maintenance of a defective approach and grade to the crossing; failure to sound the bell or blow the whistle of the engine as it approached the

crossing; and the placing of cars upon a side track, so as to obstruct the view of an approaching train.

Defendant admitted the collision and the death of Miss Mericle, but denied each and all the allegations of negligence. The trial court submitted but two of the alleged grounds of negligence, to wit: the excessive rate of speed of the train, and the alleged failure to sound the bell or blow the whistle as the engine approached the crossing. As already stated, the verdict was for the defendant, and plaintiff filed a motion for a new trial based upon twenty-eight or more grounds. The trial court, while pointing out in its ruling several specific reasons for granting the motion, sustained it generally and did not overrule any of the grounds stated as a basis for the motion. In this state of the record, it is the rule of this court not to disturb the ruling if any of the grounds were tenable. *Van Wagenen v. Parsons*, 106 Iowa 263; *Holman v. R. R. Co.*, 110 Iowa 485; *Boyd v. Tel. Co.*, 117 Iowa 338.

1. NEW TRIAL: motion assigning several grounds: sustained generally: effect.

One of the grounds of the motion was that the verdict was contrary to the evidence; and the court indicated in its ruling that this ground was well taken. Such being its holding, appellate courts are loath to interfere, for the trial court is vested with a large discretion in such matters and it is its duty to interfere whenever it believes that injustice has been done. As said in many of our cases, "it must be a clear case indeed to warrant an appellate court in interfering with its action." *Moran v. Harris*, 63 Iowa 390; *Morgan v. Wagner*, 79 Iowa 174; *Hopkins v. Knapp*, 92 Iowa 212; *Holman v. R. R. Co., supra; Maynard v. City*, 159 Iowa 126; *Eggert v. Interstate Co.*, 146 Iowa 481; *Royer v. Plaster Co.*, 147 Iowa 277; *Holland v. Kelly*, 149 Iowa 391; *Andrews v. R. R. Co.*, 151 Iowa 166; *Crider v. McColley*, 154 Iowa 671; *Porter v. Bank*, 155 Iowa 617; *Post v. Dubuque*, 158 Iowa 224; *Smith v. Smith*, 160 Iowa 111; *Woodbury County v.*

2. NEW TRIAL: granting by trial court: reluctance to overturn.

*Dougherty,* 161 Iowa 571; *Werthman v. R. R. Co.,* 128 Iowa 135; *Van Wagenen v. Parsons,* 106 Iowa 263.

It is useless to do more than cite these cases, for they so firmly establish the rules stated that quotation therefrom would serve no purpose. Appellant does not argue many of the propositions involved in the motion for a new trial, and we might stop here with the remark that we are not required in the absence of argument to find that each and all of the grounds for the new trial were not tenable. The nature of the argument is such, however, that we have concluded to refer to some of the specific propositions involved. The trial judge in giving the reasons for his conclusion stated that in his judgment instructions Nos. 5, 8, X, Xa, XI, XIa, Xb, given

**3. NEW TRIAL: instructions not submitted to counsel: when objection timely.** to the jury, were erroneous or misleading; and that another which he had prepared and submitted to counsel for defendant and which was seriously objected to by them, and which was for that reason not given, should have been included in the charge and read to the jury. Instructions Xa, XIa, and XIb were read to the jury without being submitted to plaintiff's counsel, and were not read by them until after they were given to the jury, and they had no opportunity to object or to except thereto. They did complain of them in the motion for a new trial, and the trial court thought the complaints were good. Chap. 289 of the acts of the 35th G. A. provides that—

"All requests for instructions must be presented to the judge before the argument to the jury is commenced and before reading his charge to the jury. The judge, before reading his charge to the jury, shall present all instructions to counsel on either side, each of whom shall have a reasonable time in which to examine the same. All objections or exceptions thereto must be made before the instructions are read to the jury and must point out the grounds thereof specifically and with reasonable exactness; but upon a show-

ing in a motion for a new trial that an error in such instructions was not discovered by the party claiming the error at the time of trial, such objections or exceptions may be made in the same manner in such motion for a new trial and no other objection or exception to the instructions shall be considered by the supreme court on appeal, except those made as above provided. The objections or exceptions must point out specifically the exact grounds thereof, and no other objections or exceptions shall be considered by the trial court upon motion for a new trial, or otherwise, or by the supreme court upon appeal.''

It is quite clear that even under this provision counsel may object and except to instructions given by a trial court in a motion for a new trial, whenever the trial court denies them the right to see the instructions before they are read to the jury; and it is also clear that if the trial court is led into an error by counsel's objections to an instruction which it proposes to give, it may correct that error on motion for a new trial; and to our minds it is equally clear that notwithstanding the statute quoted, the court has inherent power to order a new trial for any palpable error committed by it, or by the jury, even in the absence of a motion for a new trial.

The judge is something more than a mere moderator. He has certain duties to perform and when convinced that errors have been committed, which resulted in a palpable miscarriage of justice, it is his province, as well as his duty, to interfere and to grant a new trial. *Hensley v. Davidson,* 135 Iowa 106; *Allen v. Wheeler,* 54 Iowa 628. See also *Forbes v. Ins. Co.,* 59 N. E. (Mass.) 636; *Ft. Wayne & B. I. R. Co. v. Donovan,* 68 N. W. (Mich.) 115; *Willmar Bank v. Lawler,* 80 N. W. (Minn.) 868; *Weber v. Kirkendall,* 63 N. W. (Nebr.) 35; *Ellis v. Ginsburg,* 39 N. E. (Mass.) 800.

4. NEW TRIAL: inherent power of judge to grant.

In *Allen's* case, *supra,* this court said: ''Having found that the instruction above set out was correct, and the first

verdict having been in plain violation thereof, it was the duty
of the court to set the verdict aside.  The appellant insists
that the court could not do this on its own motion, because
Sec. 2837 of the Code provides that a verdict may be
vacated 'on the application of the party aggrieved.'  This
does not provide that the court may not upon its own motion,
and for error which is apparent, set aside a verdict.  Such
power exists at common law, and we do not understand that
any provision of our statute is a limitation of the power of
the court on its own motion to compel juries to observe and
follow the law as embodied in the instruction given by the
court.''

And in *Hensley's* case, *supra,* we said: ''Our statute
enumerates the grounds on which new trials shall be granted
on application of the aggrieved party.  Sec. 3755, Code.  But
there is no provision in the Code relating to orders of this
kind on the court's own motion.  That such right exists, how-
ever, is indisputable.  It is one of the inherent powers of the
court essential to the administration of justice.  In *Rex v.
Gough,* 2 Doug. 791, Lord Mansfield declared that, even
though too late for a motion, if enough appeared, the court
could grant a new trial, and in *Rex v. Atkinson,* 5 Term. R.
437, note, is quoted as saying that, though too late for a
motion, 'if the court conceive a doubt that justice is not done,
it is never too late to grant a new trial.'  In *Rex v. Holt,* 5
Term. R. 436, Lord Kenyon said he well remembered *Rex v.
Gough,* 'where the objection to the verdict was taken by the
court themselves,' and Buller, J., observed, in concurring,
that 'after four days the party could not be heard on motion
for new trial, but only in arrest of judgment; but if, in the
course of that address, it incidentally appears that justice
has not been done, the court will interpose of themselves.'
In *Weber v. Kirkendall,* 44 Neb. 766 (63 N. W. 35), it is said
that the power of courts of general jurisdiction, in the cor-
rection of errors committed by them, 'is exercised, not alone
on account of their solicitude for the rights of litigants, but

also in justice to themselves as instruments provided for the impartial administration of the law.' And such is the view generally entertained by the courts in this country. *Allen v. Wheeler*, 54 Iowa 628; *Ellis v. Ginsburg*, 163 Mass. 143, (39 N. E. 800); *Stanard Milling Co. v. White Line Transit Co.*, 122 Mo. 258 (26 S. W. 704); *State ex rel. Henderson v. McCrea*, 40 La. Ann. 20 (3 South. 380.); *Bank of Willmar v. Lawler*, 78 Minn. 135 (80 N. W. 868); Com. v. Gabor, 209 Pa. 201 (58 Atl. 278); Thompson, Trials, 2411; *State ex rel. Brainerd v. Adams*, 84 Mo. 310.

"In the last case the court, in upholding the power pertinently inquired: 'If the court commits a palpable error in an instruction to the jury, or witnesses misconduct of members of the jury, which, on motion, would authorize it to set aside the verdict, shall it on account of the ignorance or timidity of the aggrieved party which prevents him from moving in the matter, render an unjust judgment on the verdict? If the jury find a verdict palpably against the law as declared by the court, is it powerless to maintain its own dignity and self-respect, unless someone who feels aggrieved shall move in the matter?' "

We may also note that as to some of the instructions given by the trial court, viz.: 5, 6, 8, and 10, a showing was made that the errors were not discovered until the motion for a new trial was made, and the alleged errors and exceptions are therein pointed out. With these matters out of the way, we come now to some of the grounds which it is claimed justified the ruling of the trial court in granting the motion for a new trial.

Plaintiff's intestate, a young lady twenty-one years of age, received an invitation from one Webster to take an automobile ride with him. She accepted and the two with another man by the name of Butler got into the machine, (Webster driving) and started on their trip. They proceeded on their way, and while traveling at a slow rate of speed in a northerly direction through the town of Duncombe, came to

the defendant's railway crossing, and while attempting to cross it, were struck by a train on defendant's line of road, running at a speed estimated by some of the witnesses at more than a mile a minute. At the place where the accident occurred, there are two street crossings over the defendant's tracks, the easterly one being the place of collision. The town is a small one, the greater part of it being on the south side of the railway tracks, and the buildings along the streets and a tile yard and other structures obscured the view of a train coming from the west on defendant's track, which ran approximately east and west through the village. These also interfered somewhat with the sound of an approaching train. It is claimed and testimony was adduced to show that, on account of these obstructions, a train could not be seen approaching from the west until it was within 220 feet of the crossing. At one point about 129 feet south of the crossing, a train might be seen 350 feet away from the crossing. The railway track was higher than the street, and there was a dirt approach thereto, 53 feet in length, having a grade of 3 feet. The crossing was rough, and there was but one plank between the rails, the balance of the space having been filled with cinders, which had settled below the rails and the board.

The accident happened about 10 P. M. and no one saw it, or is able to tell just how it occurred. Webster was at the wheel, and had control of the machine; and as a result of the collision, all the occupants were killed. After being struck by the train, none of them regained consciousness. How the occupants were seated in the automobile, the record does not distinctly disclose; but it does appear that the machine was a double-seated car. There were no gates at the crossing, nor was any watchman employed; and the train which struck the machine was not scheduled to stop at the town. It was one of the defendant's fast passenger trains; and ordinarily ran at a high rate of speed. As there were no eyewitnesses, the presumption that all the occupants of the car were in the exercise of due care obtained, but the

question of Miss Mericle's contributory negligence was submitted to the jury by the following instructions:

"Inst. VIII. If you find that defendant was guilty of one or more of the acts of negligence charged as specified in these instructions, and that such negligence was the direct cause of the injury of which plaintiff complains, you will next inquire whether or not plaintiff's intestate was guilty of contributory negligence. It was the duty of the said Flossie Mericle, in approaching said crossing, to look and listen for approaching trains. The care required of her in this respect was the care which would be exercised by the ordinarily prudent person under such circumstances, having in mind the character of the crossing as known to her, or as should have been known to her by the exercise of ordinary care, the schedule of trains, if known to her, the mode by which she was traveling, the difficulties, if any, to see and hear approaching trains, the duty imposed upon defendant to give timely and adequate warning on approaching crossings, and all other matters shown in evidence which would be considered by the ordinarily prudent person under such circumstances; and if, under the circumstances, you believe that she did exercise ordinary care, then she was not guilty of negligence; but if, from all the circumstances, you do not find that she exercised ordinary care, then she was negligent, and if such negligence in any manner contributed to her injury then plaintiff cannot recover in this case.

"Inst. X. It is the law, that where one approaches the crossing of a railroad track upon which there is coming a train or engine that is liable to reach the crossing before a traveler on the highway can safely pass to the other side, and without looking or listening to discover the train, such person without any intervening circumstances which may reasonably operate to distract his attention, goes forward and is injured then he is guilty of contributory negligence and cannot re-

*5. RAILROADS: negligence: crossing accident: guest relying on driver: "look and listen" rule.*

cover. It is the duty of a traveler on a public highway, in approaching a railroad crossing for the purpose of passing over the same, to look and listen for approaching trains, and to do such acts as a reasonably prudent person would do under the same circumstances. And if the conditions are such because of obstructions which hide the view, that a reasonably prudent person would stop and look and listen under such circumstances, then it is the duty of such traveler to stop and look and listen.

"In other words, if, in approaching the crossing, there are intervening objects which interfere with the sight and hearing of the person approaching the crossing in their efforts to determine whether there is a train coming upon the track or not, then such person should use reasonable caution commensurate with the difficulties and dangers involved.

"X-a. You are told, as a matter of law, that where the situation and surroundings are without controversy shown to be such that, had a person looked in the direction of an approaching train, such person could not have failed to see it and testimony or presumption that such person did look and did discover, raises no issue from which a party is entitled to demand a verdict. Therefore, you are told that if, under the evidence, you find that there was a reasonable distance in approaching the crossing within which Flossie Mericle could have looked or listened and known of the approaching train, the evidence of any person, or the presumption existing, if any did exist, that she did look and listen would not raise an issue upon the question as to the physical facts of the situation, and physical surroundings, if without controversy, would control as against evidence of looking and listening, or presumption of looking and listening, and such evidence or presumption would raise no issue upon which a party would be entitled to demand a verdict.

"XI-a. The duty of one approaching a railroad track, where there is restricted vision, is to look and listen. If necessary, to stop to determine whether or not a train is ap-

proaching and to do so at a time and place where stopping and where looking or listening will be effective and this is a positive duty and is required by law. If one listens and looks where it would serve no purpose to do so, such is not reasonable care and where one has a chance to see and to determine and to avoid the injury, and does not do so, such person would be guilty of contributory negligence.

''XIV. If you find that the decedent, Flossie Mericle was, at the time of the collision complained of, riding with the occupants of the car, Webster, and Butler, as their guest simply, and that she had not control of the management of the car she was riding in, and of its operation, and had no control over the party who was operating the said car that she was riding in, and no power to direct his operation of said car, the negligence of either the said Webster or Butler, or either one of them, if any, cannot be imputed to the said Flossie Mericle as negligence upon her part.

''The said Flossie Mericle was only required to use such care at the time for her safety in crossing defendant's track, on her part, as a person of ordinary care, prudence and caution would exercise under the then existing circumstances surrounding her; and if you find from all the evidence before you, when weighed in the light of these instructions, that the said Flossie Mericle did exercise such care on her part, she was not guilty of negligence contributing to her injury.

''If, however, the plaintiff has failed to establish such reasonable care on the part of the said Flossie Mericle, about the time the car she was riding in approached the crossing on defendant's road, by the preponderance of the evidence, when viewed and considered in the light of the law as given you in these instructions, the plaintiff cannot recover in this case.''

The trial court was of the opinion that the first four of these instructions were erroneous, and that the errors were not cured by the last one, because of the last paragraph thereof; and we are disposed to agree with it in this conclusion. The

instructions given seem to have imposed upon plaintiff's intestate the same duty as if she were the driver and in charge of the machine; whereas she had the right to rely upon what the driver of the machine was doing, and upon his care for the safety of himself and others. The law on this subject was well stated by Mitchell, J., in *Howe v. R. R. Co.*, 62 Minn. 71 (64 N. W. 102, 30 L. R. A. 684), as follows:

"Defendant's contention is that the rule requiring a traveler on a highway, on approaching a railroad crossing, to 'look and listen,' so as to avoid danger from an approaching train, is, to its full extent, as applicable to one who is being carried in a vehicle owned and driven by another as it is to the driver, who has the control and management of the team, although the passenger has no control over the driver or the management of the team, and although no relation of principal or agent or master and servant exists between the two, so that the doctrine of *respondeat superior* would apply, or although they are not engaged in a joint enterprise, so as to create a mutual responsibility for the acts of each other. We do not think that this is, or, on principle, ought to be, the law. Negligence means merely the want of ordinary or reasonable care according to circumstances. This court, in common with most courts, has held, as a matter of law, that reasonable care requires a traveler driving along a highway, when approaching a railroad crossing, to use his senses by looking and listening to discover and avoid danger from approaching trains. Under exceptional circumstances, there may be exceptions even to this rule. But the degree of care which an ordinarily prudent and cautious man usually exercises will depend somewhat upon the responsibility which is cast upon him. And it does not seem to us that, because reasonable care makes it the absolute duty of the person who has the control of the team and vehicle to look and listen, it necessarily follows that reasonable care imposes the same absolute duty upon one riding in the vehicle, but who is not intrusted with the control and

management of the team, and has no control over the person who has. Of course, the fact that the passenger, who has no control over the team or driver, is not chargeable with the negligence of the driver, does not relieve him of the duty to exercise reasonable care to avoid danger. The fact that he is not responsible for the driver's negligence will not relieve him from responsibility for his own negligence. But the question is, what constitutes negligence, and what is the standard of reasonable care on the part of the one situated as was this plaintiff? If plaintiff had known that Pomeroy was an incompetent driver, or had known or had reason to believe that he was not performing his duty by looking for approaching trains, and had nevertheless neglected to look for himself, he would undoubtedly have been guilty of negligence. Or if he had in some way actively participated in Pomeroy's negligence, he would have been negligent. But that is not this case, or at least the evidence does not establish it. We think that it would hardly occur to a man of ordinary prudence, when riding as a passenger with a competent driver, who he had no reason to suppose was neglecting his duty, that he was required, when approaching a railway crossing, to exercise the same degree of vigilance in looking and listening for approaching trains that he would if he himself had the control and management of the team. And our conclusion is that a court cannot hold, as a matter of law, that a passenger having no control over the team or its management is guilty of negligence merely because he does not exercise the same degree of vigilance in 'looking and listening' on approaching a railroad crossing which is required of the one having the control and management of the team. It is a matter of common knowledge that under ordinary circumstances passengers do largely rely on the driver, who has exclusive control and management of the team, exercising the required care when approaching a railway crossing, and we do not think that the courts are justified in adopting a hard and fast rule that they are guilty

of negligence in doing so. Every case must depend largely upon its own particular facts. .. . . .

"Some courts make a distinction between private conveyances and public conveyances operated by common carriers, but it seems to us that any distinction based on this ground alone is wholly indefensible on principle. Others seem to make the position of the passenger the test, holding, impliedly at least, that when he is seated away from the driver by being separated from him by an inclosure, or by being inclosed in the carriage, is without opportunity to discover danger, or to inform the driver of it, the rule of 'looking and listening' does not apply to the passenger, but that otherwise it does. The presence or absence of these circumstances may be, and usually would be, material evidence upon the question of the passenger's negligence, but to hold as a matter of law, and as a rule of universal or even general application, that in their absence the passenger is guilty of contributory negligence if he does not 'look and listen,' is, in our opinion, not justifiable upon either principle or reason."

This rule appears to us to be sound, and it does not relieve the occupant of a vehicle driven by another of all care on his part as appellant's counsel suggest.

Part of these instructions were not submitted to counsel before they were read; and for reasons already stated, the complaint of and objection made to them in the motion for a new trial was timely.

We need not say more. The trial court did not abuse its discretion in granting the new trial, and its order must be and it is,—*Affirmed.*

LADD, EVANS and PRESTON, JJ., concur.