[Civil No. 4539.   Filed May 10, 1943.]

[137 Pac. (2d) 386.]

LAWRENCE J. BERRY, Appellant, v. SAMUEL SOLOMON and HARRY SOLOMON, Appellees.

Mr. C. T. McKinney and Mr. Leslie C. Hardy, for Appellant.

Mr. Harry O. Juliani, for Appellee Samuel Solomon.

McALISTER, C. J.—This is an appeal by Lawrence J. Berry from a judgment against him in favor of Samuel Solomon and Harry Solomon.

The case is here on the pleadings, the jury's answers to interrogatories, the findings of the court and conclusions of law. The complaint alleges that on November 1, 1936, the plaintiff, Berry, and one Harry Solomon entered into a partnership agreement in the real estate business in Tucson, Arizona, and that shortly thereafter it was extended to include Samuel Solomon, with Harry Solomon as manager of the business. The title to the partnership property was to be taken in the name of Samuel Solomon for the benefit of the partnership and the three partners each agreed to invest therein $3,000, or an aggregate of $9,000, constituting the original investment, one-third of the assets belonging to each of the partners who would share equally in the profits and losses. By November, 1937, plaintiff had advanced, for the benefit

of the partnership, further sums totaling $7,400, to be used for the partnership, and the sums thus advanced were to become a first lien upon all the partnership property.

At the end of 1937, the partnership had acquired 12 lots in the City of Tucson and three separate parcels of land lying outside the city, and all advances of plaintiff were used by Samuel Solomon for the purchase of these properties; the receipts from the properties received by Samuel Solomon and Harry Solomon on or before February, 1938, totaled approximately $6,500, $4,000 of which was profit, but no accounting thereof was made by them to plaintiff. Samuel Solomon and Harry Solomon placed mortgages against the partnership property in various amounts and received the proceeds from the properties without the knowledge or consent of plaintiff who has never received any part of such profits nor an accounting therefor.

In January, 1938, plaintiff came to Tucson from his home in New York City to ascertain, so far as possible, the status of the partnership, and the defendants then and there falsely, fraudulently and grossly misrepresented the facts concerning the affairs of the partnership and entered into a conspiracy to cheat and defraud the plaintiff. Samuel Solomon falsely and fraudulently represented to plaintiff that they had invested in the business $13,000, and they offered to convey to plaintiff an undivided one-half interest in and to the partnership properties, and the plaintiff, reposing confidence in defendants, accepted such offer and received a deed thereto from Samuel Solomon. The plaintiff soon afterwards gave to Samuel Solomon a general power of attorney authorizing him to deal with the property and business of the partnership as he thought fit, but revoked it later that year.

On July 15, 1940, plaintiff, at Samuel Solomon's request, delivered to him a second power of attorney which was recorded on July 20, 1940. Samuel Solomon desired the last mentioned power of attorney, thus fraudulently procured by him, for the purpose and with the intent of conveying the properties of the partnership in their entirety to third parties, and immediately after it was delivered to him, he fraudulently, willfully and for the purpose of hindering, delaying and defrauding plaintiff, and without his knowledge or consent, conveyed it to John A. Parker and Effie Parker, his wife. Thereafter, John A. Parker and his wife conveyed all this property back to the defendant, Samuel Solomon, who now holds the title thereto, and unless enjoined therefrom will hypothecate, encumber and convey such properties in an effort to deprive plaintiff of his right therein. Samuel Solomon has for a long time collected the rentals upon such properties amounting to approximately $325 each month and unless enjoined will dissipate them.

The complaint prayed for an injunction restraining Samuel Solomon from encumbering or conveying the property; that the rentals be impounded; that an accounting of the affairs of the partnership be had; and that there be paid over to him whatever amount is rightfully his; that plaintiff be declared to be the lawful, beneficial and equitable owner of a constructive trust in and to the properties and entitled to all of said property free and clear of any claim of defendants.

The answer of Samuel Solomon admitted the partnership dealings in real property and that plaintiff and his brothers, A. W. Berry and Arthur Berry, advanced certain sums to this defendant with full power to invest in real estate as he saw fit, and that title to all the holdings would be held by defendant. During 1937, and January, 1938, plaintiff and his

brothers advanced the sum of $9,700, which was applied toward purchasing and improving the properties.

In January, 1938, plaintiff returned to Tucson and inspected all the properties and the transactions defendant had in connection with the purchase, conveyance and mortgaging of said properties, and at that time claimed 60% of the properties, but it was finally agreed between plaintiff and defendant that each should have an undivided one-half interest therein. Plaintiff accepted the same in full accord and satisfaction of his claim against the defendant and this defendant delivered a deed to plaintiff for such interest on January 18, 1938.

On or about February 14, 1938, plaintiff executed a special power of attorney to this defendant and again on April 13, 1938, he executed a general power of attorney in his favor. Plaintiff agreed that this defendant should charge the sum of $100 monthly for services in the management of the property and that he would advance his share of the money to pay off obligations; that a monthly accounting should be given to plaintiff. The powers of attorney were revoked in November, 1938, but again in July, 1940, plaintiff gave another power of attorney to this defendant, which he later revoked. The plaintiff indicated that his brothers had some interest in the money advanced and that he was the agent of his brothers in all the Arizona transactions, but did not state what each of them had advanced in money. This defendant having been fully advised, in order to protect his own interest and the interest of all the parties, temporarily placed the title to all the property in the name of John A. Parker and wife and thereafter the properties were reconveyed to him by Parker and wife.

This defendant now has the legal title to these properties and an undivided one-half interest in and to them is held in trust for plaintiff. Defendant denies

misrepresenting any facts concerning said properties, but alleges he kept the plaintiff fully advised of all dealings, and denies that he obtained the powers of attorney through fraudulent misrepresentations, but that they were delivered to him voluntarily.

Defendant denies the allegation that he converted the money to his own use, but alleges that all moneys have been accounted for to plaintiff and denies that plaintiff is entitled to an accounting for the reason that he has received an accounting each month from the beginning of 1938. He denies that $7,400 was advanced by plaintiff under a special agreement and that he is entitled to a special lien upon the property, but that all money advanced by plaintiff up to February, 1938, was applied to and merged in the accord and satisfaction of January 18, 1938, and that all money advanced after that date was applied in connection with the operation of the properties with consent of plaintiff.

The court submitted the matter to the jury in ten interrogatories and all of them, except perhaps the last, were answered in favor of the defendant. The court adopted the answers which were in effect that Harry Solomon, Samuel Solomon and Lawrence J. Berry entered into an agreement late in 1936, by which each agreed to invest an equal sum of money for the purchase and development of real property in Pima County and the partners agreed to share each one-third of the profits and losses. When Berry accepted a deed on January 18, 1938, from Samuel Solomon for a one-half interest in and to the properties in question, the defendant Harry Solomon did not conceal from him any material fact concerning the business and the property, but afforded him every opportunity to examine the records relating to all the real estate transactions and by the exercise of ordinary care and diligence Berry could have ascertained the

material facts relating thereto. Samuel Solomon did not secure the power of attorney from plaintiff on July 15, 1940, for the purpose and with the intent of conveying the property to Parker and wife in order to defraud Berry. The Jury answered interrogatory No. 10, "No." It was:

"Did defendant, Samuel Solomon, convey all of said properties to the Parkers on July 20, 1940, in his own right and by virtue of the power of attorney mentioned in Interrogatory No. 9 in order to protect himself and other parties claiming an interest in said properties and not with the intent to hinder and defraud Lawrence J. Berry?"

█ The court made findings of fact, as it had a right to do in an equity case, since the jury's conclusions are advisory only, and adopted its answers with the possible exception of No. 10. It is difficult to know just what the jury meant by this answer. The court evidently did not agree with it for in Finding No. 17 it found that the deed, which was without consideration, was made to defraud Berry, and in Conclusion of Law No. 2, it concluded that this conveyance by Samuel Solomon, on or about July 20, 1940, to John Parker and wife, through the power of attorney given to him by Lawrence J. Berry, constituted a fraud on Berry, but it held that the fraud did not relate back to, nor invalidate, the accord and satisfaction of January 18, 1938.

██ The principal assignment is that the court erred in rendering judgment for the plaintiff only for an undivided one-half interest in the property, for the reason that the fraudulent conduct of Samuel Solomon in conveying all the property to James A. Parker and his wife, and thereafter causing them to reconvey it to him, constituted a rescission by Samuel Solomon of the accord and satisfaction entered into between him and Lawrence J. Berry on January 18,

1938, and gave to Berry an election of remedies afforded by equity to redress wrongs resulting from frauds, including the right to rescind the accord and satisfaction and demand an accounting of the partnership affairs from the beginning late in 1936, until January 18, 1938, when the accord and satisfaction was had. The deed to the Parkers was made on July 20, 1940, and a reconveyance to Samuel Solomon on September 7, 1940. This was more than two years after January 18, 1938, when the accord and satisfaction was had and there is nothing showing that Samuel Solomon had in mind any such action as a conveyance of the property to the Parkers when the accord and satisfaction was entered into. The power of attorney that enabled him to deed to the Parkers formed no part of the consideration for the accord and satisfaction which the court found was not fraudulent, but entered into freely and openly, the plaintiff having full knowledge of all the transactions, or at least an opportunity to have. The three partners agreed on January 18, 1938, that the property should be divided in certain proportions and this was immediately carried into effect, nothing remaining to be done by any of the three parties to the agreement. The transaction then and there became a finality. In 1 C.J.S., Accord and Satisfaction, p. 546, § 42, is found this statement:

"In the absence of a showing that an accord and satisfaction was procured by fraud or duress or was entered into and executed through mutual mistake, the courts will not go behind it and reopen the controversy which preceded it."

And in § 43, is found the further statement:

" . . . Also, an accord and satisfaction may be avoided, rescinded, or set aside for fraud in *inducing or procuring it*, . . . ". Italics ours.

The court and the jury in this case found that the accord and satisfaction was neither induced nor procured by fraud.

■ The judgment provides that plaintiff pay defendant $132.50 for services in taking care of the property during the litigation, because the title to the property was in him during this time as a result of his fraudulent conduct. The $132.50 represented one-half of the compensation due Samuel Solomon for services rendered in connection with the properties. In February, 1941, the title to the property being in his name, the court enjoined him from selling, encumbering or conveying it and in the same order directed him to "render to the Court and Counsel for Lawrence Berry, a verified itemized statement of all income from all property together with names and addresses of parties from whom received, a verified itemized statement of all indebtedness to which said income will be applied, together with estimated deficit; and parties and addresses to whom it will be paid." He was the manager of the property and since it belonged to both plaintiff and defendants, no reason appears why the plaintiff should not pay his part of this service.

■ Plaintiff objects further to the assessment of a jury fee of $486 against him. This was one-half of the jury fee, the other being assessed against the defendant and Harry Solomon for $243 each. The plaintiff asked for all of the property, or for some portion more than 50%, which defendants conceded he was entitled to from the beginning. The court gave him one-half and this being the situation, we do not see that the assessment of the jury fee should be disturbed.

The judgment is affirmed.

ROSS and STANFORD, JJ., concur.