[Civil No. 4626.   Filed April 5, 1945.]

[157 Pac. (2d) 605.]

HARRY SOLOMON, Appellant, v. SAMUEL SOLOMON, Appellee.

Messrs. Krucker, Fowler & Dodd, of Tucson, Arizona; Mr. Jerome P. Herst, of San Francisco, California, on brief, for Appellant.

Mr. Harry O. Juliani, for Appellee.

STANFORD, C. J.—Harry Solomon was the plaintiff in the action brought in the superior court. Samuel Solomon and Lawrence J. Berry were the defendants. The case was dismissed as to Berry. We shall style the Solomons as plaintiff and defendant as designated in the trial court, although by reason of the appeal they are appellant and appellee.

The case was tried by the court without a jury. The judgment was rendered for defendant, Samuel Solomon, and plaintiff, Harry Solomon, has appealed.

In 1938 at Tucson, Arizona, defendant conveyed to Lawrence J. Berry an undivided one-half interest in and to certain real estate holdings in Pima County, Arizona, mainly located in and about Tucson, all of which property stood in the name of Samuel Solomon. Thereafter Lawrence J. Berry brought an action asking that he be awarded the whole of the real property held by Samuel Solomon, and plaintiff then filed this action to establish in his favor a trust on the property held by defendant. In the first case Berry was the plaintiff and Samuel Solomon and Harry Solomon were the defendants. In the Berry case the judgment of

the trial court was to the effect that he was not entitled to the relief asked, Berry having theretofore been given a deed to a one-half interest in the property involved. Berry thereupon appealed his case, and this court on May 10, 1943, rendered its opinion as set forth in *Berry v. Solomon,* 60 Ariz. 333, 137 Pac. (2d) 386, in which opinion the judgment of the trial court was affirmed.

For a better understanding of the present case, we quote the following from the judgment in the trial court in the case of Berry v. Solomon, *supra:*

"It is Ordered, Adjudged and Decreed that the defendant Samuel Solomon is entitled to one-half undivided interest, subject to the interest of Harry Solomon, if any; and Lawrence J. Berry is entitled to one-half undivided interest, and title is hereby vested in each of them in equal undivided shares as above set out, . . . ."

The defendant first came to Tucson from New York in 1931, returning to New York in 1933. He came to Tucson again in 1934. Before coming from New York the first time he was interested with plaintiff in the novelty business and when he went to Tucson the second time he opened a novelty store.

In the summer of 1935 defendant wrote plaintiff, who was in New York, that he had on hand about $750, proceeds of sale of goods shipped to him by the New York office owned by the two of them, which he was not remitting for the reason that he had an opportunity to purchase two lots in Tucson and asked plaintiff's approval to use the funds for that purpose. There was nothing in the record showing that this investment was for a partnership purchase. The trial court's findings indicate that all property acquired by defendant was for his separate account.

In September, 1936, defendant wired plaintiff $250 urging him to come to Tucson, and the two operated a business known as "Sam Solomon and Brother," carrying novelty goods.

Shortly after plaintiff arrived in Tucson in the fall of 1936, plaintiff and defendant, Samuel Solomon, discussed the idea of entering into a partnership with Lawrence J. Berry, of New York, looking to the formation of a real estate business. Berry came to Tucson in the late fall of 1936, and it is our understanding a partnership was formed in January, 1937, whereby it was orally agreed between the three parties that each would invest the sum of $3,000 and each party would be a one-third owner in the real estate business and assets of Solomon Brothers. The defendant contributed real estate and rights to the partnership, but did not transfer title. Berry contributed cash. Nothing was paid in by plaintiff.

In January, 1938, Berry went to Tucson after having returned to his home in New York and made his claim to sixty per cent of the property involved, but agreed to accept an undivided one-half interest, and the same was accepted in full accord and satisfaction of his claim, and Samuel Solomon delivered to Berry a deed for such interest on January 18, 1938.

Among the asserted errors made by the trial court as contended by appellant are the following which we think are important to discuss: The court erred in submitting findings of fact Nos. 1, 3 and 4, and that the court also erred in not admitting in evidence the testimony of Jane Goldberger upon the stipulation that if she were present she would give certain testimony.

The findings objected to are as follows:

"1. That a partnership existed between plaintiff Harry Solomon and defendant Samuel Solomon in New York City dealing with certain novelty merchandise from 1932 to the latter part of 1936, which was dissolved, and that a new partnership was formed between Samuel Solomon, Harry Solomon and Lawrence J. Berry to deal in, purchase, sell and develop real property in Pima County, Arizona, in January, 1937."

"3. That pursuant to said agreement, defendant Samuel Solomon put in certain equities, options, con-

tracts and various parcels of real estate into the said partnership, which were individual and personal assets of the said Samuel Solomon in which the plaintiff Harry Solomon had no interest whatever, either individually or through the former two-way partnership herein above mentioned; that Lawrence J. Berry, at various times during the year 1937, contributed and invested into said partnership the sum of $10,200.00; That Harry Solomon contributed neither property nor money into the purchases or development of any of the partnership properties, either directly or through his brother Samuel Solomon.''

''4. That on or about January 18th, 1938, the three parties aforementioned met in Tucson and agreed that one-half undivided interest into all the partnership properties, the subject matter of this litigation, should go to Lawrence J. Berry and the other half to Samuel Solomon, which agreement was then and there executed.''

The stipulated testimony, which was rejected, is as follows:

''The said Samuel Solomon was supported solely by the partnership which existed between Harry Solomon and Samuel Solomon during the years 1932 to 1936, inclusive, and that the very first parcel of real estate purchased by the said partnership in the name of the defendant, Samuel Solomon, was purchased with joint funds of this plaintiff and the said Samuel Solomon, and that the said Samuel Solomon first obtained the consent of this plaintiff to said purchase before making the same and placing the title to the same in his own name for the benefit of both this plaintiff and the said Samuel Solomon, in equal shares.''

■■ The evidence in this case is very unsatisfactory. There are many conflicts and inconsistencies. If it had been our duty to determine the facts in the first instance, we might have come to a different conclusion than that arrived at by the trial court. The testimony as a whole was conflicting. There is sufficient evidence to sustain the findings, and we are

bound by the rule which has been consistently applied by this court, where the trial court's findings and judgment are supported by reasonable evidence, they must be sustained. We quote from the decision of this court in *Central Copper Co.* v. *Klefisch,* 34 Ariz. 230, 270 Pac. 629, 633:

" . . . It is true that defendant's witnesses contradicted plaintiff and her sister on all the material portions of their testimony, but the veracity of the witnesses was a question for the jury, and that question has been resolved in favor of plaintiff. Under our familiar rule we cannot disturb the verdict on the ground of a conflict in the testimony, and the first assignment of error is not well taken."

We quote also from our case of *Young Mines Co., Ltd.,* v. *Citizens' State Bank,* 37 Ariz. 521, 296 Pac. 247, 249:

"We come, then, to the last ground, which is that the verdict is not supported by and is contrary to the evidence in the case. The rule in regard to a conflict in the evidence is far different in the trial court from that in the appellate court. So far as this court is concerned, we will sustain a verdict of a jury, or the findings of the trial court, if any reasonable evidence can be found in the record to support them, and we will not consider the weight of the evidence of conflict thereon. *Leadville Mining Co.* v. *Hemphill,* 17 Ariz. 146, 149 Pac. 384; *City of Bisbee* v. *Thomas,* 24 Ariz. 614, 212 Pac. 190.

"On the other hand, the trial court not only may, but must, on an assignment of this character, pass on the weight of the evidence and if, after a full consideration of the case, in its discretion it believes that the verdict was contrary to the weight of the evidence, and that substantial justice has not been done between the parties, it is its duty to set aside the verdict and grant a new trial. *Huntsman* v. *First Nat. Bank, supra* [29 Ariz. 574, 243 Pac. 598]; *Dennis* v. *Stukey,* 37 Ariz. 299, 294 Pac. 276. In considering this ground assigned by the court for making its order, we must therefore resolve every conflict in the evidence in support of the

order, just as we follow the same rule in support of a verdict or findings which are before us for review. *Pengilly* v. [*J. I.*] *Case Threshing Machine Co.*, 11 N. D. 249, 91 N. W. 63; *Thomas* v. *Illinois Cent. R. Co.*, 169 Iowa 337, 151 N. W. 387. . . . ''

The findings of fact are based on the evidence and the objections to them go to the weight of the evidence. We can find no reason why we should sustain the plaintiff in reference to his objections to the findings made by the trial court.

The complaint alleges, following the accord and satisfaction entered into on the 18th day of January, 1938, pursuant to which defendant conveyed to Lawrence J. Berry an undivided one-half interest in and to all the properties,

"that the plaintiff Harry Solomon and defendant Samuel Solomon, the said brothers, would retain the other one-half undivided interest in and to all of said properties and assets of said co-partnership as co-partners therein and that this defendant, Samuel Solomon would continue to hold the legal title to said latter undivided one-half interest in and to said properties and assets of said co-partnership in trust for plaintiff, Harry Solomon, as to an undivided one-half interest in and to the said undivided one-half interest in and to the said properties, assets of the said copartnership remaining in the name of defendant, Samuel Solomon . . . ''

Our Code, Section 71–401, reads as follows:

"No estate of inheritance or freehold or for a term of more than one (1) year, in lands or tenements, shall be conveyed from one to another unless the conveyance be declared by an instrument in writing, subscribed and delivered by the party disposing of the same, or by his agent thereunto authorized by writing.''

The case of *Costello* v. *Cunningham*, 16 Ariz. 447, 147 Pac. 701, enlarges on paragraph 721, Civil Code of 1901, which is now our paragraph 71–401, *supra*.

■■ A survey of the evidence does not show that there was a trust created on the property involved, neither an express trust or resulting trust, the former requiring some writing and the latter requiring convincing parol evidence.

It was the finding of the trial court:

"That no trust whatever—either resulting or constructive—arose in favor of Harry Solomon in any of the properties held by Samuel Solomon in as much as there is no evidence showing that Harry Solomon contributed any part of the purchase price of the partnership properties, the subject matter of this litigation."

We approve the finding of the trial court. Plaintiff's proof in respect to a trust being created was not convincing. Our decision in *Costello* v. *Gleeson*, 19 Ariz. 532, 172 Pac. 730, 734, disposes of the question raised, and from which we quote:

" . . . The fact that Gleeson and Costello may have paid their proportions would not establish a partnership composed of Gleeson, Reilly, and Costello, with each contributing property valued at $20,000, when there is no showing that Reilly, either directly or through Costello, paid his. 'The mere agreement to form a partnership does not, in itself, create a partnership; nor does the advancement by any one party of his agreed share of the capital. The entire agreement and all of the attending circumstances are to be taken into consideration in determining whether a partnership was actually launched.' "

The last assignment of error is to the effect that the trial court erred in not granting a continuance to allow Jane Goldberger, a witness, to come from New York. The request for postponement was supported by an affidavit, and defendant stipulated that the testimony embodied in the affidavit would be given by the witness if she were present at the trial, subject, however, to objections at the trial as to the competency, materiality

and relevancy. The court denied the motion for continuance. At the trial the court excluded that portion of witness' testimony heretofore quoted, on the grounds that the testimony was wholly immaterial and irrelevant and was based on hearsay and no proper foundation had been laid for its offer. The trial court in its ruling on the motion for new trial stated:

" . . . the Court would have given no weight or credence to such testimony because there is no showing from the bare affidavit of Harry Solomon that Jane Goldberger knew the facts of her own knowledge, nor that she had any grounds for making such statements. She was not the bookkeeper of the company; she had never heard any admissions of Samuel Solomon that he put this money in the property."

We think the court erred in excluding this evidence. However, the record discloses that the rejected testimony was cumulative. If admitted it would not have affected the result. It is therefore error without prejudice.

Besides the novelty business, there was also carried on by the Solomon Brothers, the plaintiff and defendant herein, a realty business before the time when each of them were to invest the sum of $3,000, but there was no written understanding between these parties as to their interests in any business they conducted, and to the date of the accord and satisfaction, January 18, 1938, there was none, nor at that time was there anything done except there was deeded by Samuel Solomon one-half of the interest in the property involved to Lawrence J. Berry.

The judgment is affirmed.

LaPRADE and MORGAN, J. J., concur.