541 P.2d 1166

**AMTITLE TRUST COMPANY, an Arizona Corporation, and Title Insurance Company of Minnesota, a corporation, Appellants,**

v.

**India F. FITCH, a widow, Appellee.**

**No. I CA–CIV 2628.**

Court of Appeals of Arizona,
Division 1, Department A.

Nov. 6, 1975.

Rehearing Denied Dec. 18, 1975.

Review Denied Jan. 20, 1976.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P. C., by Wilbert G. Anderson, Phoenix, for appellant Title Ins Co. of Minnesota.

Walters & Haien, by Keith A. Haien, Phoenix, for appellant Amtitle Trust Co.

Divelbiss & Gage, by G. David Gage, Phoenix, for appellee.

OPINION

FROEB, Judge.

This is a constructive trust case. Appellants contend that the facts will not support the imposition of such a remedy. We agree and reverse the judgment of the trial court.

India F. Fitch (Fitch), then a widow [1] and a resident of Wyoming, became acquainted with Milan R. Heath (Heath), a scheming real estate man in September, 1970. Over the next nine months, Heath cheated Fitch out of approximately $20,000 by promising to invest the money to her advantage, but instead using the money entirely for his own benefit.

Fitch filed suit against Heath who failed to appear for trial. Judgment against him was entered in the amount of $19,800. She also sued Heath and Associates, Inc., an

---

1. The record at the time of hearing this appeal indicates that India F. Fitch is now deceased.

Arizona corporation (referred to as "the Heath corporation"), and recovered judgment against it for $9,800, as well as Western Surety Company, Heath's bondsman, for $2,000.

In addition, Fitch filed suit against appellants, Amtitle Trust Company, an Arizona corporation (Amtitle), and its successor in interest, Title Insurance Company of Minnesota (Minnesota), a corporation. After a trial, judgment was entered in favor of Fitch against both title company defendants in the amount of $9,000. The recovery was based on a determination that the corporate defendants were constructive trustees for Fitch in the amount recovered against them.

The relevant facts of this case as they relate to the liability of Amtitle and Minnesota are briefly as follows.

After Heath had succeeded in gaining Fitch's confidence and had received money from her for various ventures, he decided to form a corporation and give her a stock interest. Although the evidence is not clear, it appears Heath intended her to own a one-third interest, with another individual, Elray Corsi, owning one-third, and Heath himself owning the remaining one-third. Articles of incorporation were filed with the Arizona Corporation Commission for Heath and Associates, Inc. on May 11, 1971. Stock certificates in Heath and Associates, Inc. were thereafter issued, which, according to the corporate record book, gave Fitch a one-fifth stock ownership, Corsi, a one-fifth ownership, and Heath a three-fifths ownership. Beyond this, few other corporate formalities were observed. The trial court found that Heath ignored the corporate entity and ordered that it be disregarded, thus rendering Heath personally liable to Fitch for the $9,800 she lost in dealings she had with the corporation. This sum, together with the $10,000 arising out of another transaction, constituted the judgment in her favor against Heath for $19,800.

The judgment against the title companies was based upon a single land transaction entered into by the Heath corporation. This transaction gave rise to the imposition of the constructive trust at issue here.

## THE YUMA LAND TRANSACTIONS

The Heath corporation purchased a section of land in Yuma County from Samuel Reich and Lorraine Reich, his wife, in May, 1971. The contract took the form of escrow instructions to Amtitle, the escrow agent. It provided, among other things, that the Heath corporation would purchase the property for $112,000, with no part of the purchase price due until one year from the close of escrow, at which time annual installments with interest would begin. The escrow instructions also provided for a subdivision trust agreement which was signed by the parties on July 2, 1971. As called for by the trust agreement, the Reichs deeded the land to Amtitle, as trustee, which was to hold the legal title subject to the beneficial interests of both the Reichs and the Heath corporation. Among other things, the trust allowed the Heath corporation acreage and lot releases should it sell some or all of the property before the purchase price was fully paid.

Before the first payment became due, the Heath corporation sold its beneficial interest in the land and trust to Western National Land Corporation in accordance with instructions furnished to Amtitle on November 4, 1971.

Learning of the sale to Western National Land Corporation, Fitch and Corsi contacted a lawyer, Samuel C. Jeffries, and informed Amtitle by letter on November 15, 1971, that Jeffries was their attorney and that "all transactions [concerning the Yuma land trust] are to be submitted to our said Attorney, Samuel C. Jeffries, for his approval and all disbursements will be subject to his approval, subject to our further directions." Amtitle replied with a letter to Jeffries on November 18, 1971, saying "A review of the aforementioned trust file does not indicate where [Fitch, Corsi or Jeffries] show any interest, either as a First or Second Beneficiary under our

Trust." The exchange of correspondence had been preceded by a conversation between Jeffries and an officer of Amtitle in which Jeffries claimed that Fitch and Corsi each had an interest in the Heath corporation and suggested vaguely that they had a claim to money resulting from the sale to Western National Land Corporation.

Thereafter, Minnesota (having by that time succeeded Amtitle as trustee) closed the escrow between the Heath corporation and Western National Land Corporation. As a result, the title companies disbursed a total of $9,000 to the Heath corporation representing proceeds from the sale.

The trial court concluded that the $9,000 "represented a fund to which [Fitch] could look for a potential return of a portion of the money obtained from [her] by fraud." It determined that because the title companies had notice of the claims Fitch had against Heath, that they "held title to said $9,000 as constructive trustees in favor of [Fitch]." Although the $9,000 had already been paid to Heath, the trial court held that a constructive trust should be imposed against the title companies in favor of Fitch for the equivalent amount.

We take these facts, then, and apply them to the only legal theory upon which Fitch relies, namely, the doctrine of the constructive trust.

We have recently stated in *Arm, Inc. v. Terrazas*, 24 Ariz.App. 441, 539 P.2d 915 (1975) that:

> A constructive trust is a remedial device created by courts of equity to compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs. *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 122 N.E. 378 (1919). The gist of

the conduct which will lead to the imposition of a constructive trust is the wrongful holding of property which unjustly enriches the defendant at the expense of the plaintiff. *Brown v. Walls*, 10 Ariz.App. 168, 457 P.2d 355 (1969), [539 P.2d at 916–917.]

■ While the doctrine, due to its equitable nature, has broad application, it is not an all-purpose remedy which is available when all other remedies fail. A general claim for money damages will not give rise to a constructive trust.

■ A prerequisite to the imposition of a constructive trust is the identification of a specific property, or res, in which the claimaint has an interest.

■ In this case there is no evidence of a fund which can be traced from Fitch to the Yuma land and thence upon its sale through the title company escrow to Western National Land Corporation. In point of fact, the evidence shows and the trial court found that no part of the money received by Heath (or his corporation) from Fitch went into the purchase of the Yuma land. Indeed, the Heath corporation bought the land without expending any money for it. Thus, in the absence of evidence that part or all of the $9,000 which was disbursed from escrow to the Heath corporation by the title companies was derived from Fitch or from land in which Fitch had a direct interest, the doctrine of a constructive trust against the title companies is inapplicable.[2]

Fitch contends that the judgment of the trial court should be affirmed on the basis of the holding of the Arizona Supreme Court in *Markel v. Transamerica Title Insurance Co.*, 103 Ariz. 353, 442 P.2d 97 (1968). In *Markel*, the court imposed a

2. There are cases, not necessarily involving the remedy of a constructive trust, in which the necessity of "tracing" assets has been found essential. See, for example: *Murphy v. State*, 65 Ariz. 338, 181 P.2d 336 (1947) (trust funds) ; *Solomon v. Solomon*, 62 Ariz. 311, 157 P.2d 605 (1945) (action to establish trust) ; *Jarvis v. Hammons*, 32 Ariz. 444, 259 P. 886 (1927) (insolvency) ; *Korrick v. Robinson*, 20 Ariz. 323, 180 P. 446 (1919) (insolvency). See also *Packer v. Donaldson*, 16 Ariz.App. 294, 492 P.2d 1232 (1972) in which this court said "a constructive trust normally takes effect at the time of a wrongful act and traces funds gained by the act until rightful recovery is made."

constructive trust on assets of a title company which had disbursed proceeds from the sale of real property despite notice of an adverse claim. Many years before the sale, a divorce decree had given the claimant a one-half interest in any proceeds resulting from the sale of the land. Following the divorce, the former husband of the claimant remarried and his second wife became the owner of the land. When she sold it, the transaction was handled through an escrow and trust by the title company. Learning of the sale, the claimant demanded one-half of the proceeds from the title company. The sale transaction closed and the title company disbursed the proceeds without recognizing the claimant's interest. After extended litigation, the court held the title company liable to the claimant on a theory of constructive trust.

While *Markel* introduced in Arizona the principle that a constructive trust could be imposed even where the trustee no longer had in its possession the specific property or the fund into which it had been converted, we find that principle inapposite to this case where the claimant never established a direct interest in the property which the title companies handled. Here, no property or fund in which Fitch could claim a recognizable or traceable interest ever came into the hands of the title companies. Her claim against them is therefore nothing more than an offshoot of her general claim for damages against Heath and his corporation. The failure of Fitch to demonstrate that it was *her* money which passed through the hands of the title companies must therefore defeat her claim for a constructive trust against the title companies.

■ Finally, appellee argues that the determination by the trial court that the corporation was the alter ego of Heath supports its recovery on a theory of constructive trust. The finding by the trial court that the corporate entity should be disregarded merely supports a personal judgment in favor of Fitch against Heath for dealings conducted by him in the corporate

name. The alter ego finding is irrelevant to the question of whether a constructive trust could be imposed against the title companies.

For the reasons set forth, the judgment as to appellants Amtitle Trust Company and Title Insurance Company of Minnesota is reversed.

OGG, P. J., and DONOFRIO, J., concurring.