In the Matter of **ALLIED GENERAL AGENCY, Debtor.**

**AzStar Casualty Company, et al., Appellants,**

v.

**Allied General Agency, Appellee.**

**CIV. No. 93–1907 PHX EHC. Bankruptcy No. 92–2956–PHX–GBN.**

United States District Court, D. Arizona.

June 17, 1998.

Victoria Gruver, Guttilla & Murphy PC, Phoenix, AZ, for Azstar Casualty Co.

Don P. Martin, Streich Lang PA, Phoenix, AZ, for Occidental Fire & Casualty Co. of North Carolina.

Frederick C. Berry, Jr., Frederick C. Berry Jr., PC, Phoenix, AZ, for Milwaukee Safeguard Insurance Co.

Jeffrey M. Proper, Proper & Kirkorsky, Phoenix, AZ, for Allied General Agency, Inc.

## ORDER

CARROLL, District Judge.

This bankruptcy appeal arises from the bankruptcy court's ruling that the Nebraska Department of Insurance ("NDOI"), in its capacity as liquidator of Great Plains Insurance Company, Inc. ("GPIC"), is entitled to certain funds presently being held by the court-appointed trustee of Allied General Agency, Inc. ("Allied General"). Appellants contend that this ruling is contrary to law and that they are rightfully entitled to the funds in question. For the reasons set forth below, the Court will affirm the decision of the bankruptcy court.

## I. Background

The relevant facts are not in dispute. Prior to filing for bankruptcy, Allied General was a general insurance agency. Allied General had agency agreements with several insurance companies, including GPIC, AzStar Casualty Company ("AzStar"), Occidental Fire & Casualty Company of North Carolina ("OFC"), and Milwaukee Safeguard Insurance Company ("MSIC") to sell their insurance policies and to collect the premiums on those policies. The agreements required Allied General to hold the collected premiums in separate trust accounts and to regularly forward the balance of those accounts, less commissions and expenses, to the proper insurance companies.

In 1991, Allied General became delinquent in remitting the net premiums to GPIC and the other insurance companies. In late November of that year, Allied General was taken over by GPIC and its holding company, Great Plains Capital Corporation ("GPCC"), pursuant to a transfer of Allied General's stock to GPCC. At the time of the stock transfer, Allied General owed millions of dollars to AzStar, OFC and MSIC (collectively, "Insurance Companies" or "Appellants").

After taking over Allied General, GPIC and/or GPCC ordered Allied General to transmit all premiums received, including those attributable to the Insurance Companies' policies, directly to GPIC in Omaha, Nebraska. When the money arrived in Omaha, it was deposited into two different accounts, one for funds derived from Allied General's sale of GPIC policies and the second for funds derived from the sale of all other policies. Neither account was a trust account. Moreover, although the second account was set up under the name "Allied General Agency" and listed an Omaha address, Allied General was not doing business in Omaha at that time; the address was that of GPIC and GPCC (collectively, "Great Plains").

Great Plains then proceeded to use the money in the second account (the one containing non-GPIC premiums) for its own benefit. "Great Plains was using whatever money it could grab to pay its own bills, but in doing so Great Plains didn't distinguish between money that belonged to Great Plains and money that belonged to [Appellants] and other insurers." Docket #227, Exh. 2 ("Amended Order"), ¶ 10. As of January 1992, Great Plains had wrongfully converted more than $3.1 million of premiums belonging to other insurance companies to its own use. The bulk of the $3.1 million belonged to the Insurance Companies.[1]

On January 12, 1992, AzStar and OFC filed a complaint in Maricopa County Superior Court against Allied General, GPIC and GPCC for breach of contract, conversion and racketeering. AzStar and OFC also sought and received a temporary restraining order preventing the further dissipation of assets from Allied General by Great Plains.[2]

After a two-day evidentiary hearing on the plaintiffs' motion for preliminary injunction, the superior court found that Great Plains

---

1. Approximately ninety-nine percent (99%) of the $3.1 million belonged to Appellants. The remaining one percent belonged to other insurance companies which are not parties to this appeal.

2. MSIC filed a separate action against Allied General, GPIC and GPCC, which was consolidated by the Arizona court.

had wrongfully diverted for its own use millions of net premiums belonging to Appellants and other insurance companies from Allied General without any attempt to protect the interests of the other insurance companies. The court thus enjoined Great Plains from diverting any further net premiums and required the company to hold those premiums in trust for distribution in accordance with the agency agreements.

In addition, the Arizona court imposed two "constructive trusts." The first, for premiums attributable to insurance policies of Appellants and other insurers that were previously transferred, diverted, or otherwise conveyed from Allied General by Great Plains was imposed "to the exclusive benefit of the [Appellants] as their interests may appear." Docket # 227, Exh. 7 ("Order"), at 8. GPIC and GPCC were named as constructive trustees of the first constructive trust account.

The second constructive trust was imposed "over all funds presently or hereafter in the possession or under the control of Allied General Agency, which funds are attributable to Great Plains Insurance Company or Great Plains Capital Corp." *Id.* The court appointed a supervisor and ordered him as follows:

The Supervisor is directed to hold those funds in a separate interest-bearing account to await later determination of the Court as to whether those funds should be credited as against: (1) Great Plains' obligations due and owing to Allied; and/or (2) Great Plains' or Allied's obligations due and owing to the [Appellants] by reason of the illegal diversion of [Appellants'] premium trust funds by Great Plains.

*Id.* It is this second "constructive trust," the one containing GPIC premiums, which is the focus of the present dispute.

At the same time as the Arizona court proceedings, a second set of court proceedings were taking place in a Nebraska court with respect to Great Plains. On December 26, 1991, NDOI commenced delinquency proceedings against Great Plains in a Nebraska state court. On January 28, 1992, the Nebraska court entered an order of rehabilita-

tion providing for all premiums due Great Plains to be delivered to NDOI. On February 11, 1992, NDOI petitioned the Nebraska court for an order to liquidate GPIC.

NDOI then filed a motion to intervene in the Arizona case asserting that the Arizona proceedings were stayed pursuant to the Nebraska court's rehabilitation order. Acting as liquidator of Great Plains,[3] NDOI also claimed an interest in the funds contained in the GPIC premium account. The Arizona court promptly amended its earlier order to include NDOI as among the potential beneficiaries to the second constructive trust.

The language in the amended order pertaining to the second constructive trust provided as follows (with the substantive changes indicated in bold):

[A] constructive trust is imposed in favor of the Supervisor over all funds presently or hereafter in the possession or under the control of Allied General Agency, which funds are attributable to Great Plains Insurance Company or Great Plains Capital Corp. (collectively, "Great Plains"). The Supervisor is directed to hold such funds in a separate interest-bearing account. The Supervisor is authorized to withdraw from said account, at his discretion, for deposit into the Supervisor's trust account [as provided for by this order] any and all monies necessary to discharge commissions and policy fees due Allied by Great Plains on the premiums held or hereafter deposited in trust. The balance in said account shall await later determination of the Court as to whether the remaining funds should be credited as against: (1) other **Great Plains'** obligations due and owing to Allied; and/or (2) Great Plains' or Allied's obligations due and owing to the [Appellants] **in this case** by reason of the illegal diversion of [Appellants'] premiums trust funds by Great Plains; **and/or (3) due to the Receiver of the Great Plains Insurance Company under the Receivership imposed by the State of Nebraska on January 28, 1992.**

---

**3.** Under Nebraska law, a liquidator is a receiver, the statutory successor of a company appointed

for the purpose of winding up the company's affairs. Neb.Rev.Stat. § 44–4803(17).

**194**

Docket # 227, Exh. 2 ("Amended Order"), at 10.

In contrast to the original order, the amended order recognized NDOI's asserted interest in the proceeds of the second constructive trust fund and authorized the court-appointed supervisor to use the funds in that account to pay any debts owed to Allied General by Great Plains. Except for these two changes, the amended order is otherwise identical in substance to the original order.

On March 4, 1992, the Nebraska court liquidated GPIC. Shortly thereafter, Allied General filed a voluntary petition under Chapter 11 of the Bankruptcy Code, transferring the case to the bankruptcy court.

At issue before the bankruptcy court was the appropriate recipient of the proceeds of the GPIC premiums account, labeled a "constructive trust" by the Arizona superior court. The trustee disclaimed any interest in the funds, stating that GPIC owed no further financial obligations to Allied General. This left only two potential beneficiaries: NDOI and the Insurance Companies. The Insurance Companies requested that the bankruptcy court authorize the trustee to distribute the proceeds of the account to them. The Companies argued that NDOI did not have a cognizable claim to the constructive trust proceeds by virtue of GPIC's past wrongdoing,[4] and therefore they were exclusively entitled to the proceeds as a matter of law.

NDOI objected to the Insurance Companies' request. NDOI initially challenged that the Arizona superior court inaccurately used the label "constructive trust" to describe the GPIC premiums account. NDOI argued that the superior court did not create an actual constructive trust, even though the court may have labeled it as one, but rather created a prejudgment attachment or garnishment. Because the account was not a "constructive trust," GPIC's prior misconduct was irrelevant. Further, NDOI claimed a superior interest in the account's proceeds, arguing that the Insurance Companies' interest in the funds, which amounted to nothing more than an attachment lien and voidable preference, became void by operation of law after NDOI commenced delinquency proceedings against GPIC in Nebraska. *See* Ariz.Rev.Stat. §§ 20–630 and –636.

The matter came before the bankruptcy court on the parties' cross-motions for summary judgment. The bankruptcy court granted summary judgment for NDOI and denied the Insurance Companies' motion for summary judgment. In doing so, the court determined that the Insurance Companies did not meet their burden of proving that the superior court actually intended to create a constructive trust in its amended order, as opposed to a prejudgment writ of attachment designed to preserve the status quo pending further order of court. The bankruptcy court further found that NDOI was solely entitled to the proceeds of the second account under Arizona receivership law.

The Insurance Companies challenge these findings on appeal.

## II. Standard of Review

 The Court has jurisdiction to hear appeals from the Bankruptcy Court pursuant to 28 U.S.C. § 158(a). Conclusions of law are reviewed *de novo*, while questions of fact are reviewed under a clearly erroneous standard. *In re Alsberg*, 68 F.3d 312, 314 (9th Cir.1995), *cert. denied*, 517 U.S. 1168, 116 S.Ct. 1568, 134 L.Ed.2d 667 (1996). Grants of summary judgment are reviewed *de novo*. *In re Howard*, 192 B.R. 204, 206 (D.Ariz. 1995).

## III. Discussion

The principal issue raised on appeal is whether the bankruptcy court erred in awarding the proceeds of the "constructive trust" to NDOI. Appellants contend that the proceeds should have been distributed to the Insurance Companies as a matter of law. For this reason, Appellants now ask the

---

4. A liquidator generally stands in the shoes of its insolvent predecessor and is subject to any claims and defenses that could have been asserted against the predecessor. Consequently, Appellants argued to the bankruptcy court that GPIC's unclean hands estop NDOI from asserting a legitimate claim to the proceeds, because NDOI's hands "are deemed to be just as unclean as GPIC's." Docket # 225 ("Motion for Summary Judgment"), at 16.

Court to reverse the judgment of the bankruptcy court and to enter judgment in favor of the Insurance Companies and against NDOI.

Appellants put forth two basic arguments for reversing the judgment of the bankruptcy court. These arguments are largely identical to the arguments presented to the bankruptcy court. First, Appellants contend that the Arizona superior court intended to create and did create a second constructive trust to hold premiums attributable to GPIC, and not simply "an order preserving the status quo akin to a prejudgment writ of attachment." The distinction between a constructive trust and a prejudgment attachment is critical to this case. If the superior court did in fact intend to create a constructive trust instead of simply a prejudgment attachment, then NDOI would be estopped as a result of GPIC's past wrongdoing from claiming an interest in the proceeds and the proceeds would therefore belong to the Insurance Companies.

However, even assuming that the bankruptcy court properly concluded that the Arizona superior court did not intend to create a constructive trust, Appellants argue that NDOI would still not be entitled to the funds under applicable receivership law.

## A. Did the Arizona Superior Court Intend to Create a Constructive Trust on Funds Attributable to GPIC Premiums?

The superior court's amended order imposed a "constructive trust . . . in favor of the Supervisor over all funds presently or hereafter in the possession or under the control of Allied General Agency, which funds are attributable to [Great Plains]." The superior court's amended order recognized three potential beneficiaries of this constructive trust:

> The balance in said account shall await later determination of the Court as to whether the remaining funds should be credited as against: (1) other Great Plains' obligations due and owing to Allied; and/or (2) Great Plains' or Allied's obligations due and owing to the [Insurance Companies] in this case by reason of the illegal diversion

of [their] premiums trust funds by Great Plains; and/or (3) due to the Receiver of [GPIC] under the Receivership imposed by the State of Nebraska on January 28, 1992. *Amended Order,* at 10–11.

Notwithstanding the superior court's use of the term "constructive trust" in its amended order, the bankruptcy court determined that the superior court did not intend to create a constructive trust over all funds attributable to GPIC premiums. Rather, the bankruptcy court found that the superior court intended only to preserve the status quo and that its amended order was "akin to a prejudgment writ of attachment." The bankruptcy court concluded that:

> Although labeled a constructive trust, when looked at in its entirety, I think the above language in the original and amended orders did not support the insurance companies' arguments that a constructive trust, as defined under Arizona law, was imposed over the GPIC premiums in favor of the insurance companies.

Docket # 297 ("7/16/93 Transcript"), at 36.

■ A constructive trust is an equitable remedy crafted to prevent a party who has obtained property through unlawful means from benefitting from his wrongdoing. *Johnson v. American National Ins. Co.,* 126 Ariz. 219, 222–24, 613 P.2d 1275, 1279–80 (Ariz.App.1980); *Arm, Inc. v. Terrazas,* 24 Ariz.App. 441, 442–43, 539 P.2d 915, 916–17 (Ariz.App.1975). Courts will generally impose a constructive trust:

> whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar means or under any similar circumstances which render it unconscientious for the holder to retain (it) . . . .

*Johnson,* 126 Ariz. at 224, 613 P.2d at 1279 (quoting *Eckert v. Miller,* 57 Ariz. 94, 111 P.2d 60 (1941) (additional quotations omitted)).

■ A constructive trust arises by operation of law. *Harmon v. Harmon,* 126 Ariz. 242, 244, 613 P.2d 1298, 1300 (1980). It

removes title from the legal owner and conveys that interest to one to whom it justly belongs. *Arm, Inc.*, 24 Ariz.App. at 443, 539 P.2d at 916 (citing *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 122 N.E. 378 (1919)). The holder of legal title is held to be a trustee for the benefit of the rightful owner.

■ It should be stressed that a constructive trust is purely an equitable remedy. Although it may have broad application, it is not meant to be an all-purpose remedy which is available when all other remedies fail. *Amtitle Trust Co. v. Fitch*, 25 Ariz.App. 182, 184, 541 P.2d 1166, 1168 (Ariz.App.1976). A general claim for money damages will not give rise to a constructive trust. *Id.*

■ Essential to the imposition of a constructive trust, therefore, is the identification of specific property, or res, in which the claimant has a direct interest. *Burch & Cracchiolo, P.A. v. Pugliani*, 144 Ariz. 281, 286, 697 P.2d 674, 679 (1985)(*en banc* ); *Barrasso v. First Nat'l Bank*, 122 Ariz. 469, 472, 595 P.2d 1014, 1017 (Ariz.App.1979); *Amtitle Trust*, 25 Ariz.App. at 184–85, 541 P.2d at 1168–69 ("The failure of Fitch to demonstrate that it was Her money which passed through the hands of the title companies must therefore defeat her claim for a constructive trust against the title companies."). Before imposing a constructive trust on assets belonging to the alleged wrongdoer, courts require the aggrieved party to trace his or her interest in the assets. *Burch & Cracchiolo*, 144 Ariz. at 286, 697 P.2d at 679. In other words, the claimant is required to demonstrate that the assets in question are themselves the result of ill-gotten gains from the claimant. It is this tracing requirement which distinguishes a constructive trust from a general claim for damages. However, a party's failure to adequately trace his or her interest does not foreclose all relief; he or she still may have a claim for damages against the putative wrongdoer.

■ After reviewing the extensive record on appeal and the briefs of the parties, the Court agrees with the bankruptcy court's conclusion that the superior court did not intend to impose a constructive trust over GPIC premiums. Notwithstanding the language to the contrary, the Court finds that the superior court did not intend to create a constructive trust, but rather intended to attach the funds in anticipation of a substantial damages award against GPIC and to prevent the further dissipation of those funds prior to the execution of that award.

As pointed out by the bankruptcy court, the Insurance Companies are unable to trace any interest to the proceeds in the GPIC premiums account, because the proceeds of the "constructive trust" always belonged to GPIC:

> [T]he res of the trust is not the result of some ill-gotten gains by GPIC at the expense of the insurance company. The monies held by the supervisor are attributable to policies written by Great Plains Insurance Company. In short, there is no allegation the money converted by GPIC or Allied can be traced to this fund.

7/16/93 Transcript, at 36.

A comparison between the two "constructive trusts" created by the superior court further reveals why the second one was not an actual constructive trust. The first one was clearly a constructive trust. The superior court imposed a constructive trust on all premiums attributable to the Insurance Companies which were "transferred, diverted or otherwise conveyed" from Allied General. These funds did not rightfully belong to Great Plains and it would have been unconscionable to permit Great Plains to continue to retain them. The superior court therefore imposed a constructive trust to prevent Great Plains from becoming unjustly enriched as a result of its past wrongdoings.

By contrast, the superior court did not impose the second "constructive trust" on premiums attributable to the Insurance Companies. The premiums which were the subject of the second "constructive trust" were attributable solely to GPIC policies; they were not the result of ill-gotten gains. The premiums contained in the second account were not acquired through fraud or other wrongdoing, but were rightfully acquired from GPIC policies. The Insurance Companies' inability to trace an interest in these proceeds is fatal to their claim that the supe-

rior court intended to create a second constructive trust.

■ Appellants, however, contend that the tracing requirement is not an absolute prerequisite to the imposition of a constructive trust and may be overlooked in this case. The "swollen assets" doctrine permits a court to impose a constructive trust even in the absence of specific traceable proceeds where a wrongdoer has already disposed of misappropriated property for the wrongdoer's benefit. *See In re Hurricane Elkhorn Coal Corp. II,* 32 B.R. 737, 741 (W.D.Ky.1983). Appellants argue that the swollen assets doctrine applies in this case because GPIC used the Insurance Companies' money for its own benefit:

> Not to allow a constructive trust under such circumstances would reward GPIC for spending funds stolen from the Insurance Companies before spending its own. In addition, GPIC's estate was unjustly enriched or "swollen" because GPIC did not have to use its own funds to pay its creditors—it used the funds stolen from the Insurance Companies.

*Appellants' Opening Brief,* at 15–16.

The Court has found no case in which an Arizona court has applied the swollen assets doctrine. Appellants cite a case from the Western District of Kentucky and a 1906 case from the Second Circuit; they do not cite any cases that would suggest that Arizona courts would apply the swollen assets doctrine in this case.

■ In light of the Arizona cases which require tracing, the Court finds that Arizona courts would not adopt the swollen assets doctrine in this case. *See Burch & Cracchiolo, supra; Pioneer Annuity Life Ins. Co. v. National Equity Ins. Co.,* 159 Ariz. 148, 150, 765 P.2d 550, 556 (Ariz.App.1988) ("traceable proceeds ... should be subject to constructive trust"); *Johnson,* 126 Ariz. at 222, 613 P.2d at 1279; *Barrasso,* 122 Ariz. at 471, 595 P.2d at 1016; *Amtitle Trust,* 25 Ariz.App. at 184, 541 P.2d at 1168. These cases stand for the proposition that the trac-

ing requirement is not dispensed with lightly in Arizona, particularly where, as in this case, the aggrieved party has an adequate remedy at law.

In addition to the Insurance Companies' inability to trace the proceeds of the second "constructive trust" account, there are at least three other distinguishing factors that buttress the bankruptcy court's conclusion that the superior court did not intend to impose a traditional constructive trust over GPIC premiums. First, the superior court's order provided that the funds could be used to credit claims other than those of the Insurance Companies. One of the primary purposes of a constructive trust is to prevent the further dissipation of assets. Here, however, the superior court's order specifically provided for the further dissipation of assets and did nothing to protect the Insurance Companies' asserted interest in the funds. Based on the language of the amended order, the supervisor could have withdrawn all of the money from the account, leaving nothing for the Insurance Companies. It makes no sense to impose a constructive trust over the proceeds and then permit the supervisor to use the proceeds in a manner inconsistent with the rights of the beneficiaries of the trust (*i.e.,* the Insurance Companies).

Another significant factor which distinguishes the GPIC premium account from a traditional constructive trust is the lack of an identifiable beneficiary or any language ordinarily used in the creation of a trust. The first constructive trust clearly identified the Insurance Companies as the sole beneficiaries. The second "trust," however, did not identify any beneficiaries with similar clarity. The superior court provided that it would later decide whether the remaining funds should be "credited" as against (1) obligations owed to Great Plains; (2) obligations owed to the Insurance Companies; or (3) due to NDOI. This is not language normally used in the creation of a trust.[5] It is, however, wholly consistent with language used to designate an attachment or garnishment. The absence of formal trust language further sup-

---

**5.** On the contrary, the use of the word "credited" in both the original and amended orders suggests that the funds were to have been distributed to

Great Plains (or its statutory successor), less any damages awarded to the Insurance Companies and/or Allied General.

ports the conclusion that the superior court did not intend to create a constructive trust.

Finally, and perhaps most significantly, is NDOI's inclusion as a potential beneficiary of the "constructive trust." Appellants contend that the superior court imposed the constructive trust for the benefit of all victims of GPIC's misconduct: Allied General and the Insurance Companies. Appellants assert that "[t]he fact that [Allied General] was also a potential beneficiary of the Constructive Trust Account is consistent with [the superior court's] imposition of a constructive trust."

However, Appellants do not address the fact that the amended order also identifies NDOI as a potential beneficiary. NDOI is not a victim of GPIC's wrongdoing. Moreover, as Appellants have repeatedly pointed out, because NDOI "stands in the shoes" of GPIC and is subject to any claims and defenses that could be asserted against GPIC, NDOI would have no cognizable claim to the proceeds if the account was actually a constructive trust. It is therefore inconsistent for the superior court to name NDOI as a potential beneficiary of any constructive trust.

On the other hand, it is logical and consistent for the superior court to identify NDOI as a potential recipient of the proceeds of the GPIC premiums account and to make that account subject to a prejudgment writ of attachment or similar order maintaining the status quo.[6] Such an order contemplates a possible judgment against GPIC in favor of Insurance Companies and/or Allied General, but also recognizes that GPIC's statutory successor had an interest in either the whole or the remainder.

 It should be noted that the Insurance Companies had the burden of proving by clear and convincing evidence the existence of a constructive trust and their

rights to the res of that trust. *In re Johnson*, 960 F.2d 396, 401 (4th Cir.1992); *Sonnenschein v. Reliance Ins. Co.*, 353 F.2d 935, 936 (2nd Cir.1965); *Stoltz v. Maloney*, 129 Ariz. 264, 267, 630 P.2d 560, 563 (Ariz.App. 1981); *Chirekos v. Chirekos*, 24 Ariz.App. 223, 224, 537 P.2d 608, 609 (Ariz.App.1975). The Court agrees with the bankruptcy court that the Insurance Companies have failed to meet this burden here. The only evidence that the superior court intended to impose a constructive trust on the GPIC premiums account was the use of the "constructive trust" label. However, as the above analysis shows, the superior court did not actually create a constructive trust in substance, even though it may have referred to the account as a constructive trust in its order and amended order.[7] The bankruptcy court determined that it was required to elevate substance over form and disregard the label given to the GPIC premiums account and instead look at what the account was intended to accomplish. The Court agrees. *See Johnson v. Nychyk*, 21 Ariz.App. 186, 188, 517 P.2d 1079, 1081 (Ariz.App.1974) (designation of form of trust is not controlling as court looks to substance).

In summary, the Court finds that the bankruptcy court properly determined that the superior court intended only to preserve the status quo to prevent further dissipation of the GPIC premium account, rather than create a constructive trust. Although the superior court described the GPIC premiums account as a "constructive trust," there is no evidence that it intended to create a constructive trust, as defined by Arizona law.

 One final matter that must be addressed at this time is whether NDOI was entitled to challenge the existence and legal viability of the superior court's constructive trust during the bankruptcy proceedings. Appellants argue that NDOI's failure to ap-

---

6. The purpose of attaching the funds would be to ensure that adequate funds would be available to cover a future award of damages against Great Plains.

7. Appellants often fail to distinguish between the order and the amended order. *See Appellant's Opening Brief*, at 16–17. For example, Appellants argue that the alleged "constructive trust" was intended to benefit only Allied General and

the Insurance Companies. However, the amended order included a third potential beneficiary, NDOI. Appellants repeatedly overlook this fact and rely instead on the language of the original order. As a practical matter, the amended order supplanted the original order. Once the superior court issued the amended order, the original order became legally null and void.

peal the superior court's order and amended order creating the constructive trust prevented NDOI from collaterally attacking those orders during the bankruptcy proceedings. Appellants contend that the bankruptcy court was therefore required to give res judicata effect to the superior court's amended order which created the constructive trust, and committed reversible error when it did not do so. After reviewing the record, the Court does not agree with these assertions.

The amended order did not definitively resolve any of the parties' competing claims or establish the rights of any of the parties. All that the amended order declared was that the Insurance Companies, Allied General, and NDOI *may* each have a valid claim to the proceeds of the GPIC premium account. It did not determine which of those parties was entitled to the proceeds.

The language used in the amended order unequivocally rebuts any claim that the order was final. The amended order read that:

> The balance in said account **shall await later determination of the Court** as to whether the remaining funds **should be credited** as against. . . .

As is evident from this language, the amended order was clearly interlocutory in nature.

However, Appellants argue that NDOI should have appealed the "constructive trust" label given to the GPIC premium account. Appellants contend that the superior court made an express declaration of ownership: "[it] specifically found that Allied General Agency ('AGA') and/or the Insurance Companies, *not* GPIC, were entitled to the GPIC premiums." *Appellants' Reply Brief*, at 6 (emphasis in original). This is not entirely accurate. First of all, neither the original order nor the amended order entirely foreclosed the possibility that GPIC or its statutory successor might be entitled to some or all of the funds. The language used in both orders implied that the funds continued to belong to GPIC and that Allied General's and

the Insurance Companies' claims against GPIC **might** be "credited" against those funds.

Moreover, Appellants' argument ignores the simple fact that the amended order expressly provided that NDOI may also be entitled to the funds. Because the alleged "declaration of ownership" specifically included NDOI, NDOI suffered no harm from the amended order and had no basis upon which to appeal from the amended order.[8] The amended order did not "remove GPIC's ownership of the premium funds," as Appellants allege. Rather, it merely ruled that GPIC's ownership interest in the proceeds might (note the use of the conditional tense in both the order and amended order) be subject to valid claims of third parties.[9]

The bankruptcy court did not "fail[ ] to give res judicata effect to the Order and Amended Order."[10] All that the bankruptcy court did was to undertake the superior court's "later determination" after the action was transferred to the bankruptcy court. For the reasons discussed above, the Court finds that the bankruptcy court did not err "in failing to determine that the Nebraska Liquidator was barred by res judicata from attacking the existence and legal viability of the constructive trust. . . ." *Appellants' Opening Brief*, at 21.

**B. Did the Bankruptcy Court Properly Award the Proceeds of the GPIC Premium Account to NDOI?**

▪ Having found that the superior court did not intend to impose a constructive trust over the GPIC premium account, the next issue before the bankruptcy court was whether NDOI, as GPIC's liquidator, was entitled to the funds. Resolution of this issue requires a basic understanding of Arizona receivership law.

Ariz.Rev.Stat. § 20–625 provides in part that:

---

8. By contrast, if the superior court had refused to recognize NDOI's asserted claim to the proceeds of the account, then NDOI would have had a valid reason to appeal.

9. This is further proof that the superior court intended only to attach the funds in anticipation

of a judgment against GPIC, and not impose an actual constructive trust.

10. As discussed previously, the Order was supplanted by the Amended Order and was therefore entitled to no res judicata effect.

The domiciliary receiver for the purpose of liquidating an insurer domiciled in a reciprocal state shall be vested by operated of law with the title to all of the property, contracts and rights of action and all of the books and records of the insurer located in this state, and he shall have the immediate right to recover balances due from local agents and to obtain possession of any books and records of the insurer found in this state. He ˙shall also be entitled to recover the other assets of the insurer located in this state. . . .

Ariz.Rev.Stat. 20–625(B).

NDOI is the domiciliary receiver for GPIC in Nebraska. Provided that Nebraska is a "reciprocal state" within the meaning of the statute, NDOI is automatically vested with title to all of GPIC's property in Arizona, including the GPIC premiums account established by the superior court. The Insurance Companies' interest in the proceeds, which amounts to a mere prejudgment attachment, would therefore be void by operation of law. *See* Ariz.Rev.Stat. § 20–630 ("Any lien obtained . . . within four months prior to the commencement of any such delinquency proceeding or at any time thereafter shall be void as against any rights arising in the delinquency proceeding.").

The crucial question, therefore, is whether Nebraska is a reciprocal state. After comparing at length Arizona and Nebraska receivership laws, the bankruptcy court concluded that Nebraska was a reciprocal state for purposes of Ariz.Rev.Stat. § 20–625(B), and therefore determined that NDOI was entitled to the proceeds of the GPIC premiums account by operation of law.

Under Arizona law, a reciprocal state is defined as:

[A]ny state other than this state in which in substance and effect the provisions of the uniform insurers liquidation act, as defined in § 20–631, are in force, including the provisions requiring that the director of insurance or equivalent insurance super-

visory official be the receiver of a delinquent insurer.

Ariz.Rev.Stat. § 20–611(10).

█ Arizona, like the majority of states, has adopted the Uniform Insurers Liquidation Act (the "Uniform Act"). *See* Ariz.Rev.Stat. §§ 20–611, *et seq.*[11] The purpose of the Uniform Act is "to provide for a uniform, orderly and equitable method of making and processing claims against financially troubled insurers and to provide for fair procedures for rehabilitating the business of such insurers and, if necessary, distributing their assets." *Matter of Mutual Benefit Life Ins. Co.*, 258 N.J.Super. 356, 368, 609 A.2d 768, 775 (N.J.Super.A.D.1992).

Nebraska, on the other hand, has adopted the National Association of Insurance Commissioners' Insurers Supervision, Rehabilitation and Liquidation Model Act (the "Model Act"). *See* Neb.Rev.Stat. §§ 44–4801 to – 4862. Although Nebraska is not a Uniform Act state, the Court finds that it is a "reciprocal state" by adopting of the Model Act. *See Mutual Benefit Life Ins.*, 258 N.J.Super. at 369, 609 A.2d at 775 (Uniform Act states and Model Act states are reciprocal in terms of liquidation statutes).

The only express requirement for reciprocity with Arizona is that the other state must require that the director of insurance or equivalent insurance supervisory official be the receiver of a delinquent insurer. Ariz.Rev.Stat. § 20–611(1). In Nebraska, the term "receiver" is defined as "liquidator, rehabilitator, or conservator as the context requires." Neb.Rev.Stat. § 44–4803(17). The Nebraska Director of Insurance is designated to fill each of these roles. *See* Neb.Rev.Stat. §§ 44–4813 (rehabilitator), 44–4818 (liquidator), 44–4850 (conservator).

A further comparison between Nebraska and Arizona's liquidation statutes reveals that they are similar in substance and effect. After reviewing the applicable Nebraska statutes, the Court finds that the concerns underlying the Uniform Act indicate that Ne-

11. Ariz.Rev.Stat. § 20–631(A) provides that paragraphs 1 to 5, inclusive, and paragraphs 7 to 13, inclusive, of § 20–611, together with §§ 20–613, 20–614, and 20–624 to 20–630, inclusive, are and may be cited as the Uniform Insurers Liquidation Act.

braska should be treated as a reciprocal state.

The Uniform Act provides for six "central remedies:" (1) the designation of the insurance commissioner of the domicile state as the receiver for an insurer; (2) authority for domiciliary receivers to proceed in non-domiciliary states; (3) vesting of title to assets in the domiciliary receiver; (4) provision for non-domiciliary creditors to have the option to proceed with claims before local ancillary receivers; (5) uniform application of the laws of the domiciliary state to the allowance of preferences among claims; and (6) prevention of preferences for diligent non-domiciliary creditors with advance information. *See Twin City Bank v. Mutual Fire Marine & Inland Ins. Co.*, 646 F.Supp. 1139, 1141 (S.D.N.Y.1986), *aff'd*, 812 F.2d 713 (2nd Cir. 1987); *Mutual Benefit Life Ins.*, 258 N.J.Super. at 368, 609 A.2d at 774. As in the *Twin City* case, the bankruptcy court in this case conducted a comparison of the Nebraska statutes with the six central remedies of Arizona's Uniform Act. It found that Nebraska receivership law provided for each of these six central remedies of Arizona's Uniform Act, and thus concluded that "in substance and effect" the laws of the two states were largely similar.

As discussed above, the Nebraska Director of Insurance serves as the receiver. Like Arizona, Nebraska authorizes domiciliary receivers to proceed in non-domiciliary states. *Compare* Neb.Rev.Stat. § 44–4852(1) *with* Ariz.Rev.Stat. § 20–625(B). Further, Nebraska law also provides for the vesting of title to assets in a domiciliary receiver. *See* Neb.Rev.Stat. § 44–4818(1).

The fourth factor is also met, because Nebraska law affords non-domiciliary creditors the option of proceeding with claims before local ancillary receivers. Neb.Rev.Stat. § 44–4855 ("Claimants residing in states which are not reciprocal states shall file claims in this state. Claimants residing in reciprocal states may file claims either with the ancillary receivers, if any, in their states or with the domiciliary receiver."). *Cf.* Ariz.

Rev.Stat. § 20–626(A) ("claimants residing in reciprocal states may file claims either with the ancillary receivers, if any, in their respective states, or with the domiciliary ·receiver.").

Nebraska law also provides for the uniform application of the laws of the domiciliary state to the allowance of preferences among claims. Specifically, Neb.Rev.Stat. · § 44–4858 states:

> [T]he order of distribution of the domiciliary state shall control as to all claims of residents of this and reciprocal states. All claims of residents and reciprocal states shall be given equal priority of payment from general assets regardless of where such assets are located.

Neb.Rev.Stat. § 44–4858. This is substantially identical to Ariz.Rev.Stat. § 20–629, which provides that: "All such claims owing to residents or nonresidents shall be given equal priority of payment from general assets regardless of where the assets are located."

Finally, both Arizona and Nebraska provide for the prevention of preferences for diligent domiciliary creditors with advance information. *Compare* Neb.Rev.Stat. §§ 44–4803(22) and 44–4828(a) *with* Ariz.Rev.Stat. §§ 20–630 and 20–636. As the above comparison suggests, Nebraska and Arizona have substantially similar receivership laws.

Despite the obvious similarities between laws of the two states, Appellants assert that Nebraska should not be considered a reciprocal state. The Court finds the various arguments put forth by Appellants to be largely without merit. For the most part, the asserted differences are superficial and illusory. Appellants point out that Nebraska limits three of the six central remedies to liquidation proceedings, whereas the remedies under Arizona law are available in liquidation *and* rehabilitation proceedings. However, Arizona law only permits creditors to file claims in liquidation proceedings.[12] *See* Ariz.Rev.Stat. §§ 20–620(A), 20–621(A). Thus, the remedies in question apply only to

---

**12.** It would defeat the primary purpose of rehabilitation to permit creditors to file claims in a rehabilitation proceeding. It is only after efforts

to rehabilitate fail and the court orders liquidation of an insurer that creditors may present claims against the insurer.

liquidation proceedings in both Arizona and Nebraska. The case cited by Appellants, *Irwin v. Pacific American Life Ins. Co.,* 10 Ariz.App. 196, 457 P.2d 736 (Ct.App.1969), is inapposite. This is therefore a distinction without a difference, and clearly does not illustrate "a significant alteration in the substance and effect of the [Uniform Act]." *Appellants' Opening Brief,* at 33.

Appellants further contend that the *Twin City* test is inapplicable here, because Arizona's own version of the Uniform Act does not include the sixth "central remedy." [13] The Court fails to comprehend how this would defeat a finding that Arizona and Nebraska are reciprocal states. At most, this would simply mean that Nebraska must provide for only five central remedies of the Uniform Act, which it does.

Appellants further argue that, unlike Arizona, Nebraska does not permit competing creditors to interpose defenses to claims. Appellants contend that "[t]his represents the loss of a significant protection for creditors and a distinct difference between the two statutory schemes." *Appellants' Reply Brief,* at 14. However, Nebraska law clearly provides an adequate forum for the resolution of competing claims. *See* Neb.Rev.Stat. § 44–4839, 44–4843. Although the procedure followed may be somewhat different, there is no significant difference in substance and effect between the claims procedures in Arizona and Nebraska.

Finally, Appellants argue that Arizona would not qualify as a reciprocal state under Nebraska law, and therefore, under the concept of mutuality, Arizona should not consider Nebraska to be a reciprocal state. This argument is puzzling. The Arizona statute does not require mutuality and it is the statutory definition with which the Court is concerned. The case cited by Appellants, *State ex rel. Low v. Imperial Ins. Co.,* 140 Ariz. 426, 682 P.2d 431 (Ariz.App.1984), does not stand for such a sweeping proposition. Ariz. Rev.Stat. § 20–611(10) provides that a state is a "reciprocal state" if the other state ap-

plies in substance and effect the provisions of the Uniform Act. Although the word "reciprocal" might take on a different meaning in another context, the Court is limited to the statutory definition in this context. The definition given to the term "reciprocal" by the Arizona legislature should control in this case.

The Court finds Nebraska to be a reciprocal state. NDOI is therefore entitled to the proceeds of the GPIC premiums account by operation of law. *See* Ariz.Rev.Stat. § 20–625(B). The Insurance Companies' interest in the funds is void under Ariz.Rev.Stat. § 20–630.

## IV. Conclusion

For the reasons discussed above, the judgment of the bankruptcy court will be affirmed. The bankruptcy court properly granted summary judgment for NDOI and the Court has found no basis for disturbing that judgment on appeal.

Accordingly,

**IT IS ORDERED** affirming the judgment of the bankruptcy court.

---

**13.** Although Arizona receivership laws provide for the prevention of preferences for diligent non-domiciliary creditors with advance information, *see* Ariz.Rev.Stat. § 20–636, the relevant statute is not included as part of the Uniform Act. *See* Ariz.Rev.Stat. § 20–631 (section 20–636 is not part of the Uniform Act).